1

2

3

4

IN THE UNITED STATES DISTRICT COURT

5
FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

6

7

8
STEPHANIE AGNEW, FELISA BRYANT, DEBORAH CERKEZOGLU, AZA ZHAMBEKOVA, and SHAWNA STUMP, on their own behalf and on behalf of others similarly situated,

Case No. 2:25-CV-02006-JHC

9

**DEFENDANT MACY'S RETAIL HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

10

11
Plaintiffs,

**NOTE ON MOTION CALENDAR:** February 9, 2026

12
v.

13
MACY'S RETAIL HOLDINGS, LLC,

**ORAL ARGUMENT REQUESTED**

14
Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 7

II.  BACKGROUND ................................................................................................. 8

III. LEGAL STANDARD ....................................................................................... 10

IV. ARGUMENT .................................................................................................... 11

  A. Plaintiffs' CEMA Claims are Preempted by Federal Law ........................... 11

    1.  CAN-SPAM Preempts CEMA Unless the Claim Sounds in Tort ......................... 11

    2.  Plaintiffs' Claims Are Not Alleged as Traditional Tort Theories, and Thus Are Preempted ........................................................................................... 13

  B. The Dormant Commerce Clause Renders CEMA Unconstitutional ....................... 17

    1.  CEMA Impermissibly Regulates Conduct Wholly Outside of Washington ....................... 18

    2.  CEMA Excessively Burdens Interstate Commerce .............................................. 19

  C. Plaintiffs Do Not Plead their CEMA Claim with Particularity ............................... 21

    1.  Plaintiffs Do Not Plead Any Elements of Fraud—Much Less with Particularity ............... 21

    2.  Plaintiffs Do Not Allege Facts to Suggest the Challenged Subject Lines Are False or Deceptive ........................................................................................... 21

  D. Plaintiffs' CPA Claim Fails Because it is Derivative of Their CEMA Claims........................ 23

V.  CONCLUSION ................................................................................................. 23

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 2
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008)..................................................................................................11

5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................10

7

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
    777 F.3d 712 (4th Cir. 2015) ................................................................................13

8

9

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ........................................................................11, 22

10

11

*Brown v. Old Navy, LLC*,
    567 P.3d 38 (Wash. 2025).....................................................................................14

12

*Brummett v. Washington's Lottery*,
    171 Wn. App. 664, 288 P.3d 48 (2012) ...............................................................15

13

14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ................................................................................22

15

16

*Conservation Force, Inc. v. Manning*,
    301 F.3d 985 (9th Cir. 2002) ..........................................................................18, 20

17

*Dahlstrom v. Life Care Centers of Am., Inc.*,
    2023 WL 4893491 (W.D. Wash. Aug. 1, 2023) ..................................................10

18

19

*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018) ................................................................................19

20

21

*Dep't of Revenue v. Davis*,
    553 U.S. 328 (2008)...............................................................................................18

22

*Elcon Const., Inc. v. E. Washington Univ.*,
    273 P.3d 965 (2012)...............................................................................................13

23

24

*Matter of Est. of Rule*,
    No. 83097-0-I, 2022 WL 3152591 (Wash. Ct. App. Aug. 8, 2022) .....................17

25

26

*GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ................................................................................11

27

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ....................................................................... *passim*

28

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 3
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

*Healy v. Beer Inst.*,
  491 U.S. 324 (1989)..................................................................................7, 18, 20, 21

*In re iPhone 4s Consumer Litig.*,
  F. App'x 414 (9th Cir. 2016) ...............................................................................11

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
  2009 WL 10676391 (W.D. Wash. May 27, 2009)..............................................13, 16

*Joseph v. Amazon.com, Inc.*,
  46 F. Supp. 3d 1095 (W.D. Wash. 2014)..................................................................21

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...............................................................................11

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
  48 F.3d 391 (9th Cir. 1995) ...................................................................................17

*Kleffman v. Vonage Holdings Corp.*,
  2007 WL 1518650 (C.D. Cal. May 23, 2007) .....................................................12, 13

*Lacano Invs., LLC v. Balash*,
  765 F.3d 1068 (9th Cir. 2014) ...............................................................................10

*Martin v. CCH, Inc.*,
  784 F. Supp. 2d 1000 (N.D. Ill. 2011) .....................................................................15

*Martin v. Miller*,
  600 P.2d 698 (Wash. Ct. App. 1979) .......................................................................14

*Martin v. Miller*,
  600 P.2d at 700–01 .................................................................................................15

*MaryCLE, LLC v. First Choice Internet, Inc.*,
  166 Md. App. 481 (Md. Ct. Spec. App. 2006) ...........................................................19

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993) ....................................................................................20

*Nat'l Pork Producers Council v. Ross*,
  6 F.4th 1021 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023)...................................17, 19

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ............................................................................ *passim*

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970).........................................................................................19, 20

*Roil Energy, LLC v. Edington*,
  2016 WL 4132471 (Wash. Ct. App. Aug. 2, 2016)....................................................16

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) ................................................................................17, 18, 19

*SEC v. Todd*,
    642 F.3d 1207 (9th Cir. 2011) ...........................................................................................11

*Shroyer v. New Cingular Wireless Services, Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ...........................................................................................10

*South Dakota v. Wayfair*,
    585 U.S. 162 (2018).......................................................................................................19, 20

*Sperling v. DSW, Inc.*,
    699 Fed. Appx. 654 (9th Cir. 2017).................................................................................22

*Stiley v. Block*,
    130 Wn.2d 486 (1996) ........................................................................................................13

*Storey v. Amazon.com Servs. LLC*,
    No. C23-1529-KKE, 2024 WL 2882270 (W.D. Wash. June 7, 2024) .........................15

*Strum v. Exxon Co., U.S.A.*,
    15 F.3d 327 (4th Cir. 1994) ...............................................................................................22

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................................15

*Taie v. Ten Bridges LLC*,
    704 F. Supp. 3d 1147 (W.D. Wash. 2023)......................................................................23

*Cafasso ex. rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...........................................................................................21

*Hendrix ex rel. United States v. J-M Mfg. Co.*,
    Inc., 76 F.4th 1164 (9th Cir. 2023) ..................................................................................14

*Universal Health Servs., Inc. v. United States*,
    579 U.S. 176 (2016)............................................................................................................15

*Valley Bank of Nev. v. Plus Sys., Inc.*,
    914 F.2d 1186 (9th Cir. 1990) ...........................................................................................18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................................21

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...........................................................................15

*Wright v. Lyft, Inc.*,
    406 P.3d 1149 (Wash. 2017)........................................................................................14, 16

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 5
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

**Statutes**

15 U.S.C. § 7701 ........................................................................................................ *passim*

15 U.S.C. § 7704 ...............................................................................................13, 16, 17

15 U.S.C. § 7707 .........................................................................................................7, 12

RCW 19.190.010 ...................................................................................................... *passim*

Washington's Consumer Protection Act...............................................................8, 10, 14, 23

**Other Authorities**

16A Wash. Prac., Tort Law & Practice (5th ed.) ...............................................................15

F.R.C.P. Rule 9(b)...................................................................................................7, 11, 21, 22

F.R.C.P. Rule 12(b)(6)..............................................................................................................10

Restatement (Second) of Torts § 525.....................................................................................13

S. REP. 108-102...........................................................................................................................17

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1    **I.      INTRODUCTION**

2          Plaintiffs seek to utilize a Washington statute—the Commercial Electronic Mail Act

3    ("CEMA"), RCW § 19.190.010 et seq.—to override a federal law designed to govern the precise

4    conduct that CEMA purports to regulate. This Court should not allow them to do so, and their claims

5    must be dismissed for three reasons: (1) they are expressly preempted by federal law, (2) the

6    dormant Commerce Clause precludes them, and (3) they do not allege facts to support their

7    conclusory allegation that the challenged subject lines are actually false or deceptive as required

8    under Rule 9(b). Plaintiffs' derivative claims thus necessarily fail.

9          Plaintiffs' CEMA claim is expressly preempted by the Controlling the Assault of Non-

10   Solicited Pornography and Marketing ("CAN-SPAM") Act. By its very language, CAN-SPAM

11   "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly

12   regulates the use of electronic mail to send commercial messages. . ." 15 U.S.C. § 7707(b)(1). While

13   this provision contains a narrow carve-out for state laws prohibiting "falsity or deception," *id.*, the

14   Ninth Circuit held that it only saves claims involving "traditionally tortious or wrongful conduct."

15   *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061–63 (9th Cir. 2009). "The CAN–SPAM Act

16   established a national standard, but left the individual states free to extend traditional tort theories

17   such as claims arising from fraud or deception to commercial e-mail communication." *Id*. at 1064.

18         Further, the dormant Commerce Clause forecloses Plaintiffs' CEMA claims because CEMA

19   purports to "directly control[] commerce occurring wholly outside the boundaries of a State." *Healy*

20   *v. Beer Inst.*, 491 U.S. 324, 336 (1989). CEMA impermissibly applies to emails sent from outside

21   Washington state to a Washington resident, regardless of whether the individual is in Washington

22   state when they receive the email. Further, CEMA projects Washington's regulatory scheme outside

23   the state and purports to create a de facto nationwide standard for commercial email, which the

24   dormant Commerce Clause forbids. Because CEMA's broad and burdensome reach renders it

25   infeasible for out-of-state entities to weed out Washington residents and thereby avoid Washington's

26   regulation, CEMA excessively burdens interstate commerce.

27         Finally, even if Plaintiffs could overcome these hurdles, their claims still fail under Rule

28   9(b), which would necessarily apply if they could establish that their claims sound in fraud (as

1  required to avoid preemption). Here, each Plaintiff simply points to an email and asserts that it is
2  false or deceptive because the promoted sale allegedly continued past the specified end date, but they
3  allege no facts to support this theory. The fact that Macy's frequently runs sales promotions on
4  various products is not, in itself, sufficient to suggest that any given products were on sale longer
5  than advertised, as required to suggest that a subject line promoting a sale is false or deceptive.
6  Plaintiffs' derivative claim under Washington's Consumer Protection Act ("CPA"), which is based
7  entirely on CEMA, fails for all the same reasons.

8  **II.    BACKGROUND**

9      Macy's is an iconic department store that sells a wide range of clothing, furniture, household
10  items, and accessories, through its website and brick-and-mortar stores. Throughout the year, Macy's
11  offers promotions on various merchandise items, which it advertises through periodic emails. (*See*
12  Compl. ¶¶ 43–48, 107.)

13      Plaintiffs each claim to have received at least one email from Macy's that stated in the
14  subject line that an advertised sale would end at a specified time. (*Id.* ¶¶ 86–90.) They claim these
15  subject lines created a "false sense of urgency" by falsely suggesting that the sales would end sooner
16  than was actually the case, "luring" customers to make purchases. (*Id.* ¶¶ 4, 42.) As a result, they
17  claim, the email subject lines violate CEMA's prohibition against sending emails that "[c]ontain[]
18  false or misleading information in the subject line." (*Id.* ¶ 109 (citing RCW 19.190.020(1)(b)).)
19  Plaintiffs do not allege that they read the challenged subject lines, opened the emails they received,
20  or bought anything in reliance upon them. Indeed, they allege no facts suggesting that they suffered
21  any harm from the purportedly misleading subject lines.

22      Plaintiffs concede—just as common sense dictates—that the body of the challenged emails
23  may contain additional information which clarifies the promotional terms. (*See* Compl. ¶ 72 (noting
24  that the body of the email with the subject line "One Day Sale is on! Up to 60% off spring finds"
25  clarifies that the sale has been extended "through Sunday.").) Nevertheless, they do not attach the
26  challenged emails to the Complaint, and allege nothing about their contents or the details of any
27  challenged promotion. Instead, they solely cite each subject line, in a vacuum, and assert that it was
28  false or deceptive because Macy's later sent another email containing an allegedly similar promotion

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 8
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

in the subject line. Plaintiffs do not allege any facts concerning these follow-up emails, either. Nor do they allege facts to suggest that the promotions discussed in the emails they received overlapped in any way with the promotions discussed in subsequent emails.

- **Plaintiff Zhambekova** allegedly received an email on July 13, 2025 with the subject line, "Ends tonight! EPIC deals on summer styles." (*Id.* ¶ 89.) She does not identify the promoted "EPIC deals." Nonetheless, she claims that the unspecified deals on unspecified items could not have ended on July 13, 2025, because on July 18, 2025, Macy's sent a subject line stating "Starts now! Up to 50% off summer styles." (*Id.* ¶ 68.) While Plaintiff claims this email promoted a "comparable sale," she does not identify any facts to support this claim, or any items that were allegedly included in both sales. (*Id.*)

- **Plaintiffs Agnew and Bryant** each received a different email on August 3, 2025. (*Id.* ¶¶ 86–87.) The subject line for Agnew's email stated, "Ends in hours! Our BEST deals of the summer." (*Id.* ¶ 86.) Bryant's, in turn, stated: "End-of-summer sale: up to 50% off ends tonight!" (*Id.* ¶ 87.) Plaintiffs claim these subject lines were misleading because on August 5 and 11, 2025, Macy's sent additional emails with subject lines stating, "Flash Sale: up to 60% off summer styles starts NOW" and "Clearance! Up to 70% off summer looks," respectively. (*Id.* ¶¶ 70–71.)

- **Plaintiff Stump** received an email on November 10, 2024, with the subject line, "Last chance! 40-60% off disappears tonight *poof*." (*Id.* ¶ 90.) Plaintiff alleges that this subject line was deceptive because on November 14, 2024, Macy's sent an email with the subject line stating, "Black Friday deals are here!" (*Id.* ¶ 47.) While she claims this latter email was "advertising additional reductions, some of which exceeded 60%," she does not identify any items included in both sales. (*Id.*)

- **Plaintiff Cerkezogly** allegedly received an email on March 14, 2025 with the subject line, "One Day Sale is on! Up to 60% off spring finds"; an April 15, 2025 email with the subject line, "Flash Sale! 50% off dresses, suits & more"; and a May 26, 2025 email with the subject line, "Up to 60% off! Last chance to save on summer styles". (*Id.* ¶ 88.) Similar to the other plaintiffs, she contends that these subject lines were deceptive because they were followed by

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 9
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1    emails promoting other sales on unspecified items, but does not identify facts about anything

2    included in any of the sales. (*Id.* ¶¶ 61–67.)

3        While the Complaint contains other purported examples of Macy's commercial emails whose

4    subject lines Plaintiffs claim contain false or misleading statements (Exhibit A), Plaintiffs do not

5    claim to have received them and do not allege facts to suggest they are false or misleading.

6    Nevertheless, they purport to bring this class action lawsuit on behalf of all Washington residents

7    who received any of these emails. (*Id.* ¶ 93.)

8        Plaintiffs bring two causes of action on behalf of themselves and a putative class. First, they

9    claim that Macy's violated CEMA by sending emails that "[c]ontains false or misleading

10   information in the subject line." (*Id.* ¶¶ 104–110.) Second, they bring a derivative claim under the

11   Consumer Protection Act ("CPA"), based solely on this theory that Macy's violated CEMA. (*Id.* ¶¶

12   111–120.) They seek statutory damages of $500 per violation, treble damages (that is, $1,500 per

13   email, per recipient), in addition to attorneys' fees and injunctive relief. (*Id.* at ¶ 120, Prayer for

14   Relief ¶¶ B–D.)

15   **III.    LEGAL STANDARD**

16       To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

17   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

18   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

19   *also Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). This

20   pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

21   accusation." *Iqbal*, 556 U.S. at 678. And neither legal conclusions nor "[t]hreadbare recitals of the

22   elements of a cause of action" are sufficient to state a claim. *Id.*; *Lacano Invs., LLC v. Balash*, 765

23   F.3d 1068, 1071 (9th Cir. 2014); *Dahlstrom v. Life Care Centers of Am., Inc.*, 2023 WL 4893491, at

24   *3 (W.D. Wash. Aug. 1, 2023). Rather, the complaint must contain well-pled factual allegations

25   establishing a plausible right to relief. *See Iqbal*, 556 U.S. at 678. "Determining whether a complaint

26   states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience

27   and common sense." *Id.* at 679.

28

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 10
Case No. 2:25-cv-02006-JHC

Benesch Friedlander Coplan & Aronoff, LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

A plaintiff alleging fraudulent conduct must further satisfy Rule 9(b), which requires the plaintiff to plead the circumstances constituting fraud with particularly. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also:

> [T]o deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (emphasis added, internal citations and quotation marks omitted). To satisfy Rule 9(b), it is not enough for the plaintiff to simply claim a representation is false—she must "explain what is false or misleading about the statement made and *why it is false*." *In re iPhone 4s Consumer Litig.*, F. App'x 414, 415 (9th Cir. 2016) (quoting *Cafasso ex. rel. United States v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011)) (emphasis added). That is, a plaintiff must plead evidentiary facts giving rise to an inference that the allegedly fraudulent statements were false when made. *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549-53 (9th Cir. 1994), superseded by statute on other grounds as stated in *SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).

## IV.    ARGUMENT

Plaintiffs attempt to utilize a state statute designed to prevent fraudulent or misleading email marketing to hold hostage a nationwide retailer for promotional emails that they ostensibly never read or relied on in any way. This novel theory is nothing more than a shakedown, and the U.S. Constitution forecloses it in two ways—through both the Supremacy Clause and the dormant Commerce Clause. Regardless, Plaintiffs have not pled facts to suggest that Macy's violated CEMA in any way.

### A.    Plaintiffs' CEMA Claims are Preempted by Federal Law

#### 1.    CAN-SPAM Preempts CEMA Unless the Claim Sounds in Tort

Congress has enacted a federal regulatory scheme governing commercial emails like the ones that Plaintiffs allegedly received, and CEMA subverts that scheme. Under the Supremacy Clause, "state laws that conflict with federal law are 'without effect.'" *Altria Group, Inc. v. Good*, 555 U.S.

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 11
Case No. 2:25-cv-02006-JHC

Benesch Friedlander Coplan & Aronoff, LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

70, 76 (2008). Congress may choose to "explicitly define[] the extent to which its enactments preempt state law." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (quoting *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997)).

That is precisely what Congress chose to do with respect to state laws seeking to regulate "commercial email." *See* 15 U.S.C. § 7707(b)(1). "After individual states initially wrestled with properly balancing the benefits and burdens of commercial e-mail, Congress enacted [the CAN-SPAM Act of 2003]" as "the federal statutory scheme" that Congress intended to regulate this subject matter on a nationwide basis. 15 U.S.C. § 7701(b)(1); *Virtumundo*, 575 F.3d at 1045; *see also Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 355 (4th Cir. 2006) (CAN-SPAM enacted as "a national standard" in response to "patchwork of liability standards"). In CAN-SPAM, Congress struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel*, 469 F.3d at 354. Congress recognized the problems posed by prior attempts to regulate commercial emails on a state-by-state basis, in part because email "does not specify a geographic location," which in turn makes it "extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11). In other words, the CAN-SPAM Act was designed to ensure that "legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007).

Consistent with Congress's intent, CAN-SPAM contains an express preemption provision, which states that the Act "supersedes any statute, regulation, or rule of a State" that "expressly regulates the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1). CEMA is a statute that expressly seeks to regulate "commercial electronic mail message[s]" directed at Washington residents, so that law fits squarely within the express preemption provision. *See* RCW 19.190.010; *Virtumundo*, 575 F.3d at 1058 (recognizing CEMA as "Washington's statute regulating commercial e-mail messages").

CAN-SPAM Act's broad preemption provision contains a "limited, narrow exception" for state laws that proscribe "falsity or deception." 15 U.S.C. § 7707(b)(1); *Virtumundo*, 575 F.3d at

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 12
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1061; *Omega World Travel, Inc.*, 469 F.3d at 354 (noting that "Congress . . . intended falsity to refer

to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort").

As discussed further below, that exception does not apply here. The Ninth Circuit has interpreted

this exception to refer only to "traditional tort theories such as claims arising from fraud or deception

to commercial e-mail communication." *Virtumundo*, 575 F.3d at 1061–63; *see also Omega World

Travel, Inc.*, 469 F.3d at 353 (finding Oklahoma statute "reach[ing] beyond common law fraud or

deceit" in regulation of commercial emails was preempted).

   As a result, Plaintiffs' claims survive preemption only if they satisfy the traditional tort

theory of fraud or misrepresentation. *Virtumundo*, 575 F.3d at 1063; *Kleffman v. Vonage Holdings,

Corp.*, No. CV-07-2406GAFJWJX, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007) (finding

California statutory email claims "clearly preempted" because plaintiff "does not allege a traditional

tort theory at all, or even that he was at any point mislead by any of the eleven . . . emails"); *see also

Omega World Travel*, 469 F.3d at 354 (only claims in the "vein of tort" survive preemption); *Beyond

Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717–18 (4th Cir. 2015) (CAN-SPAM saves only

"complete regime[s] of tort liability.").

### 2.   Plaintiffs' Claims Are Not Alleged as Traditional Tort Theories, and Thus Are Preempted

   Common law claims involving fraud or misrepresentation require (among other things)

materiality, reliance, actual injury, and deceptive intent. *Stiley v. Block*, 130 Wn.2d 486, 505 (1996);

*Omega World Travel, Inc.*, 469 F.3d at 354; Restatement (Second) of Torts § 525 (stating that claim

for "deceit," *i.e.*, "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon

the misrepresentation," and "pecuniary loss"); *accord Elcon Const., Inc. v. E. Washington Univ.*, 273

P.3d 965, 970 (2012) (summarizing "nine essential elements of fraud"). These requirements

generally mirror those set forth in CAN-SPAM. *See* 15 U.S.C. § 7704(a)(2) (imposing liability

where a sender transmits a subject line likely to mislead a reasonable recipient about a material fact

and does so with actual or implied knowledge of the misleading nature).

   By contrast, CEMA requires far less than common law fraud. *Isomedia, Inc. v. Spectrum

Direct, Inc.*, 2009 WL 10676391, at *3–4 (W.D. Wash. May 27, 2009) (the "required elements of a

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 13
Case No. 2:25-cv-02006-JHC

Benesch Friedlander Coplan & Aronoff, LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

claim under CEMA" do not "include all the elements of common law fraud."). And unlike a tort claim for fraud, or a false advertising claim under the CPA, statutory damages under CEMA are available regardless of whether the plaintiff suffered any injury caused by the challenged representation. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154 (Wash. 2017) (holding that CEMA "does not condition the award of damages on proving either injury or causation"); *accord Brown v. Old Navy, LLC*, 567 P.3d 38, 42 (Wash. 2025) ("CEMA's $500 penalty does not require a showing of actual damages.").

Plaintiffs anchor their claim on CEMA's per-se-violation and statutory-damages provisions, foregoing any allegations that could establish the elements of a traditional tortious misrepresentation claim. (*See* Compl. ¶¶ 104–110.) Plaintiffs thus advance the very kind of strict-liability theory that CAN-SPAM preempts—without alleging the elements of a traditional fraud or deceit claim. (*Id.*) As a result, this Court need not decide whether CEMA is preempted on its face or whether a plaintiff could survive preemption by pleading the additional elements required to establish a traditional fraud or deceit claim. Because Plaintiffs do not even attempt to plead a theory of liability based on the elements of traditional torts, their individual claim cannot survive preemption:

*Materiality*. There is no question under current law that to survive preemption, the challenged misrepresentation must be material. *Virtumundo,* 575 F. 3d at 1059 (claims based on "immaterial misstatements" are preempted); *id.* at 1061–62 (stressing that "materiality component comport[s] with the policy pursued by the federal legislation as a whole"); *id*. at 1065 (only claims premised on "*material*" misstatements survive preemption) (emphasis in original); *id*. (requiring "something of *material* importance") (emphasis in original).

To prove materiality, Plaintiffs must show that the challenged subject lines mattered to *their own* purchasing decisions. They cannot do so here, since they do not even allege that they read the subject lines, let alone that the subject lines influenced their behavior in any way. Courts consistently require this individualized showing. *See Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979) (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant"); *Hendrix ex rel. United States v. J-M Mfg. Co.*, Inc., 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 14
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1    "material to [the plaintiff's] decision-making").

2          Nor would the subject line have been material to anyone else. A statement is material only if

3    a reasonable person would "clearly attach importance" to it when deciding "to enter into the

4    transaction," and only if it affects "the very essence of the bargain." *Martin v. Miller*, 600 P.2d at

5    700–01; *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n.5 (2016). As applied

6    here, a subject line is not material because it would not drive a customer to make a purchase. *See*

7    16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed.) (emphasis added) ("A material fact is one

8    that not only influences and affects the transaction, but also goes to its very essence and

9    substance."); *see also Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) (a

10   consumer's decision to open an email is insufficient to establish materiality).

11         Even if materiality could be determined by looking at the subject lines in isolation (which of

12   course it cannot), Plaintiffs' claim still fails. As a matter of Washington law, statements that create

13   an alleged false sense of urgency are not material. *See Brummett v. Washington's Lottery*, 171 Wn.

14   App. 664, 678, 288 P.3d 48 (2012) (advertisement claiming tickets were "going fast" was not

15   "something of material importance"). At most, this type of subject line may influence when the

16   consumer decided to buy—prompting a purchase one day earlier due to an asserted "sense of

17   urgency"—but it does not alter the fundamentals of the transaction, and is therefore not material.

18   Regardless, reasonable consumers understand that "the devil is in the details," *Workman v. Plum*

19   *Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015), and that the body of an email will provide

20   additional terms. Again, even Plaintiffs recognize that at least some of the challenged emails clarify,

21   in the body of the email, the duration of the promotion referenced in the email's subject line. (*See*

22   Compl. ¶ 72.) *See also Storey v. Amazon.com Servs. LLC*, No. C23-1529-KKE, 2024 WL 2882270,

23   *6 (W.D. Wash. June 7, 2024) (explaining that "reasonable consumers . . . read all the terms and

24   conditions").

25         ***Reliance***. Fraud requires proof that a plaintiff "justifiably relied on the defendants'

26   misrepresentations," and "[a] party's reliance is justified when it is 'reasonable under the

27   surrounding circumstances.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 761–62 (9th Cir. 2007) (quoting

28   *ESCA Corp. v. KPMG Peat Marwick*, 135 Wash. 2d 820, 828 (1998)). Plaintiffs do not claim to have

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 15
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1   read any of the offending subject lines. (*See* Compl. ¶¶ 85–90.) Their claim to have merely received

2   the emails "is not the same as an allegation that [they or] anyone else acted in reliance upon the

3   information contained in it." *See Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *4

4   (W.D. Wash. May 27, 2009). Absent any allegation of reliance, Plaintiffs have failed their pleading

5   requirement, and there is no need to even reach the issue of whether reliance was justified.

6        A reliance requirement is consistent with CAN-SPAM, which only applies where a subject

7   line "would be likely to mislead a recipient, acting reasonably under the circumstances." *See* 15

8   U.S.C. § 7704(a)(2); *see also Virtumundo*, 575 F.3d at 1062 ("[T]he CAN-SPAM Act prohibits only

9   *deceptive* subject line headings or *materially* false or *materially* misleading header information."

10  (emphasis in original)). Both the Fourth Circuit and Ninth Circuit have rejected similar state-law

11  attempts to regulate "mere error" or "insignificant inaccuracies" that fall short of fraud or deception.

12  *See Virtumundo*, 575 F.3d at 1048, 1061–63 (holding that CAN-SPAM preempted CEMA claims

13  brought by internet domain registrant related to email subject lines that allegedly misrepresented or

14  obscured the identity of the sender); *Omega World Travel, Inc.*, 469 F.3d at 359 (holding that

15  "allowing a state to attach liability to bare immaterial error in commercial e-mails would be

16  inconsistent with the federal [CAN-SPAM] Act's preemption text and structure"). "It would be

17  logically incongruous to conclude that Congress endeavored to erect a uniform standard but

18  simultaneously left states and local lawmakers free to manipulate that standard to create more

19  burdensome regulation." *Virtumundo*, 575 F.3d at 1063. Under such an approach, a single state's

20  strict laws would "become a de facto national standard"—"undermin[ing] to the point of near-

21  irrelevancy" the "national standard" that Congress created, and creating a "loophole so broad that it

22  would virtually swallow the preemption clause itself." *Omega*, 469 F.3d at 355; *accord Virtumundo*,

23  575 F.3d at 1061.

24        **Injury.** Actual damages are a core element of any common-law fraud or misrepresentation

25  claim. *See Roil Energy, LLC v. Edington*, 2016 WL 4132471, at *18 (Wash. Ct. App. Aug. 2, 2016)

26  (affirming dismissal of fraud claim where the plaintiff "failed to prove that he suffered any

27  damages"). CEMA, by contrast, expressly does not require any showing of injury. *Wright*, 406 P.3d

28  at 1154. It instead imposes $500-per-email liability without any showing of injury or harm. Plaintiffs

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 16
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1  depart from tort principles, as they do not allege that they suffered any harm from receiving the
2  challenged emails. Nor could they, as Plaintiffs do not even allege that they ever noticed or opened
3  any of the allegedly misleading emails. Thus, Plaintiffs' theory cannot fall within CAN-SPAM's
4  narrow savings clause.

5      *Scienter.* Plaintiffs do not contend that Macy's knew that the subject lines were false or
6  misleading or intended to mislead them or anyone else, as required to establish traditional fraud or
7  deceit. *Matter of Est. of Rule*, No. 83097-0-I, 2022 WL 3152591, at *3 (Wash. Ct. App. Aug. 8,
8  2022) (affirming dismissal of plaintiff's fraud claim for failing to allege that defendant knew the
9  representation was false or that defendant intended to mislead the plaintiff); *Omega*, 469 F.3d at
10  353-54 (fraud or deceit tort requires sender "knew" statements were false).

11      Again, CAN-SPAM is instructive, as it only applies where a sender "has actual knowledge,
12  or knowledge fairly implied on the basis of objective circumstances," that the challenged subject line
13  is deceptive. 15 U.S.C. § 7704(a)(2). Similarly, in enacting CAN-SPAM, Congress specifically
14  targeted senders who were "seek[ing] to defraud consumers," S. REP. 108-102, 2, by "purposefully"
15  sending misleading information. 15 U.S.C. § 7701(a)(8) (emphasis added); 15 U.S.C. § 7704(a)(2)
16  (expressly requiring "knowledge" of falsity to impose liability). Again, "[i]t would be logically
17  incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously
18  left states and local lawmakers free to manipulate that standard to create more burdensome
19  regulation." *Virtumundo*, 575 F.3d at 1063.

20      **B.      The Dormant Commerce Clause Renders CEMA Unconstitutional**

21      Plaintiffs' claims are also barred by the Dormant Commerce Clause, which operates as a
22  "limitation upon the power of the States," implicit from Congress's authority "[t]o regulate
23  Commerce with foreign Nations, and among the several States." *See Sam Francis Found. v.
24  Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). "From early in its history, the Supreme Court
25  has interpreted the Commerce Clause as implicitly preempting state laws that regulate commerce in
26  a manner that is disruptive to economic activities in the nation as a whole." *Nat'l Pork Producers
27  Council v. Ross*, 6 F.4th 1021, 1026 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023).

28

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 17
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1    State laws can violate the Dormant Commerce Clause in two primary ways. *See Kleenwell*

2    *Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 395 (9th Cir. 1995).

3    First, a state statute is invalidated if it "directly controls commerce occurring wholly outside the

4    boundaries of a State[.]" *See Healy*, 491 U.S. at 336. Second, a statute may violate the Dormant

5    Commerce Clause if it "imposes a burden on interstate commerce 'clearly excessive in relation to

6    the putative local benefits.'" *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 995 (9th Cir.

7    2002). CEMA fails on its face under both standards.

8            1.    **CEMA Impermissibly Regulates Conduct Wholly Outside of Washington**

9            CEMA violates the Dormant Commerce Clause because it "directly controls commerce

10   occurring wholly outside the boundaries of" Washington. *Healy*, 491 U.S. at 336. This occurs when

11   "a state law directly affects transactions that take place . . . entirely outside of the state's borders."

12   *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990) (citation and internal

13   quotation marks omitted). Such a statute is "virtually *per se* invalid." *Dep't of Revenue v. Davis*, 553

14   U.S. 328, 338 (2008).

15           States are not permitted to regulate extra-territorial conduct simply because it may impact

16   one of their residents. For example, the Ninth Circuit invalidated a California statute seeking to

17   regulate sales where "the seller resides in California or the sale takes place in California." *Sam*

18   *Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). Despite the residency

19   limitation, the court determined that "the state statute facially regulates a commercial transaction that

20   'takes place wholly outside of the State's borders'"—given that a California resident might make

21   sales outside of California—and thus violated the dormant Commerce Clause. *Id.*

22           Here, CEMA's subject-line provision purports to govern "commercial electronic mail

23   message from a computer located in Washington or to an electronic mail address that the sender

24   knows, or has reason to know, is *held by a Washington resident*," irrespective of whether the

25   recipient is in Washington at the time the email is received. RCW 19.190.020(1) (emphasis added).

26   In other words, CEMA facially regulates commercial emails sent from outside Washington to a

27   "Washington resident" regardless of where that resident is located when receiving the email.

28   Macy's, for example, is not a Washington resident. *See* Notice of Removal, Doc. #1, ¶ 15. Plaintiffs

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 18
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1  nonetheless seek to hold Macy's liable for any emails sent to any Washington resident, regardless of

2  their actual location at the time the email was received, and regardless of whether the email actually

3  entered into Washington.[1]

4      A closer look at CEMA's text reveals even more problems. CEMA defines residency by

5  reference to whether "information is available, upon request, from the registrant of the internet

6  domain name contained in the recipient's electronic mail address[,]" which may have outdated or

7  inaccurate residency information. *See* RCW 19.190.020(2). In such cases, CEMA purports to

8  directly regulate, for example, the conduct of Macy's sending commercial emails to a Missouri

9  resident who created an email address while living or attending college in Washington twenty years

10 ago. Just as in *Christies, Inc.*, "[t]he mere fact that some nexus to a state exists will not justify

11 regulation of wholly out-of-state transactions." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615

12 (9th Cir. 2018) (citing *Christies, Inc.*, 784 F.3d at 1322). The Dormant Commerce Clause precludes

13 Plaintiffs' CEMA claims purporting to regulate wholly out-of-state transactions. Further, Plaintiffs

14 do not allege any facts establishing that they or any members of the putative class received the

15 challenged emails while in Washington.

16      **2.   CEMA Excessively Burdens Interstate Commerce**

17      CEMA further violates the Dormant Commerce Clause because the law seeks to impose a *de*

18 *facto* nationwide standard for commercial emails. That overreach excessively burdens interstate

19 commerce.

20      Under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), courts

21 may strike down "[s]tate laws that 'regulate even-handedly to effectuate a legitimate local public

22 interest[.]'" *South Dakota v. Wayfair*, 585 U.S. 162, 173 (2018) (quoting *Pike*, 397 U.S. at 142);

23 *Ross*, 598 U.S. at 379 (noting that the Supreme Court has "invalidated state laws . . . that appear to

24 have been genuinely nondiscriminatory" under *Pike*). A state law violates the Dormant Commerce

25  _____

26 [1] Courts that have upheld anti-spam statutes challenged under the dormant Commerce Clause have
   done so only after interpreting those statutes as applying to emails that were sent from or received in
27 the state. *See MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md. App. 481, 525–26 (Md. Ct.
   Spec. App. 2006) (upholding a law prohibiting the transmission of email containing false
28 information to a Maryland email address, on the grounds that the regulation applied only to
   transactions that used a computer in Maryland or were sent to an address in Maryland).

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 19
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1  Clause if it imposes a burden on interstate commerce "clearly excessive in relation to the putative

2  local benefits." *Pike*, 397 U.S. at 142; *Wayfair,* 585 U.S. at 173. "Generally speaking, the Commerce

3  Clause protects against inconsistent legislation arising from the projection of one state regulatory

4  regime into the jurisdiction of another State." *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633,

5  639 (9th Cir. 1993) (quoting *Healy*, 491 U.S. at 336–37).

6      CEMA is unconstitutional under the Dormant Commerce Clause because it projects

7  Washington's regulation of commercial emails into other states and subjects Macy's and other

8  nationwide retailers to compliance with inconsistent regulatory schemes. *See id.* (finding statute

9  unconstitutional under the Dormant Commerce Clause where it would force the NCAA to adopt

10  Nevada's regulations for use in all states and would subject it to inconsistent legislation arising from

11  the injection of Nevada's regulatory scheme into the jurisdiction of other states); *Healy*, 491 U.S. at

12  336. Congress's decision to enact CAN-SPAM, a nationwide standard regulating commercial email,

13  demonstrates that statutes like CEMA present an interstate impact of a national concern. *See*

14  *Manning*, 301 F.3d at 995. As explained above, "Congress intended [the CAN-SPAM Act] to

15  regulate commercial e-mail messaging practices 'on a nationwide basis'" to standardize "the

16  patchwork of state laws" imposing disparate regulations. *Virtumundo*, 575 F.3d at 1062–63 (quoting

17  CAN-SPAM Act). CEMA was one example of the disparate state statutes that Congress intended to

18  address. 15 U.S.C. § 7701(a)(11). Because "it can be difficult or impossible to identify where

19  recipients live and hence to determine the state laws that apply" to a particular email transmission,

20  the strictest state standard would become the "de facto" standard. *Omega World Travel, Inc.*, 469

21  F.3d at 355–56; *Virtumundo*, 575 F.3d at 1063 (noting that "one state's Internet laws may impose

22  compliance costs on businesses throughout the country.")

23      CEMA tries to skate over that problem by limiting its application to email addresses that "*the*

24  *sender knows, or has reason to know,* [are] held by a Washington resident." RCW 19.190.020(1)

25  (emphasis added). But even if a company could know that an email address belongs to a Washington

26  resident, the company could never know whether the recipient received the email while in

27  Washington or elsewhere. Moreover, the statute defines "reason to know" in such a broad and

28  burdensome manner that, in practice, an out-of-state commercial entity must assume that CEMA's

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 20
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

standards apply to every email it decides to send. Under CEMA, "a person knows that the intended recipient of a commercial electronic mail message is a Washington resident if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(2). By Plaintiffs' theory, out-of-state commercial email senders must contact the registrant of each domain name used for subscribing customers (which could number in the tens of thousands) and request information about their residency to identify Washington residents. As a result, Macy's faces the uncertainty and burden of needing to comply with CEMA's restrictions nationwide. This is the "projection of one state regulatory regime into the jurisdiction of another State," and the Dormant Commerce Clause forbids it. *Healy*, 491 U.S. at 337.

**C.      Plaintiffs Do Not Plead their CEMA Claim with Particularity**

As discussed above, the only way for Plaintiffs to avoid preemption by CAN-SPAM is to plead a claim that sounds in fraud. For any claim that sounds in fraud, however Rule 9(b)'s heightened pleading standard applies. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (a claim need not specifically be a plain "fraud" claim for the rule to apply).

**1.      Plaintiffs Do Not Plead Any Elements of Fraud—Much Less with Particularity**

As discussed above, Plaintiffs omit several elements of a traditional misrepresentation tort claim from their theory of liability, including materiality, reliance, injury, and scienter. Plaintiffs' failure to allege these elements prevent them from plausibly stating a claim that avoids preemption. Their claims fall especially short of Rule 9(b). *See, e.g., Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (dismissing plaintiff's fraud claim for merely alleging that Amazon made a false statement, and failing to allege how the misrepresentation was material, or that he rightfully relied upon it to his detriment).

**2.      Plaintiffs Do Not Allege Facts to Suggest the Challenged Subject Lines Are False or Deceptive**

While Plaintiffs repeatedly allege that the challenged subject lines are "false and deceptive," and that the sales lasted longer than they anticipated, such conclusory labels are insufficient under Rule 9(b). *See, e.g., Cafasso, U.S. ex Rel. v. General Dynamics C4 Sys., Inc.*, 637

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 21
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

1    F.3d 1047, 1055 (9th Cir. 2011) (plaintiff must allege "what is false or misleading about [the

2    purportedly fraudulent] statement, and why it is false."). Instead, Plaintiffs must both explain why a

3    challenged statement is false or deceptive, and also allege facts to support their theory of deception.

4    *Sperling v. DSW, Inc.*, 699 Fed. Appx. 654, 655 (9th Cir. 2017) (affirming dismissal of claim that

5    sales were illusory, where the plaintiff failed to "allege sufficient facts to show with particularity

6    how [and] why" the reference prices on the items they purchased were false or deceptive.). Plaintiffs

7    cannot "simply cry fraud" to satisfy Rule 9(b), such as by pointing to a statement and asserting that it

8    is misleading. *Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 331 (4th Cir. 1994).

9        Plaintiffs fail to satisfy this heightened standard. The Complaint does not allege any facts to

10   suggest that the promotions referenced in the subject lines lasted longer than they expected. Instead,

11   they reflexively assume that just because Macy's, which sells hundreds of thousands of products,

12   advertised promotional deals on two separate days in close proximity, that the earlier promotion

13   must have never ended. However, "the fact [of] frequent sales of various items does not support an

14   inference that those sales were fraudulent or deceptive." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761

15   F.3d 732, 738 (7th Cir. 2014). Here, Plaintiffs do not allege any facts to suggest that *any* items that

16   were offered on sale as part of the challenged emails continued to be on sale thereafter—much less

17   to the same extent, as required to plead a "false sense of urgency."

18       For example, Plaintiff Zhambekova asserts that the subject line "Ends tonight! EPIC deals on

19   summer styles" must be deceptive because five days later, Macy's ran a promotion for "Up to 50%

20   off summer styles." This is a non-sequitur. Plaintiffs allege no connection between these two sales

21   and the merchandise included in each one, other than that both involved unspecified summer styles.

22   Plaintiffs do not claim the same items were included in each sale, or that the alleged "EPIC deals"

23   were not, in fact, more favorable to than those in the second sale. Without such facts, Plaintiffs

24   cannot plead with particularity that the first subject line was deceptive.

25       Again, the purpose of Rule 9(b) is to "prohibit plaintiffs from unilaterally imposing upon the

26   court, the parties and society enormous social and economic costs absent some factual basis." *Bly-*

27   *Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). This purpose would be destroyed if

28   Plaintiffs could state a CEMA violation based on nothing more than the fact that they received a

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 22
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5828

1  marketing email, and that the same retailer later sent another email containing another promotion,

2  without further detail.

3        **D.**      **Plaintiffs' CPA Claim Fails Because it is Derivative of Their CEMA Claims**

4        Plaintiffs do not allege any of the elements of an independent CPA claim. Rather, Plaintiffs'

5  CPA claim is predicated exclusively on the alleged CEMA violation. (Compl. ¶¶ 112–119 ("A

6  violation of CEMA is a per se violation of the CPA."); *id.* ¶ 113.) The Court should also dismiss

7  Plaintiffs' claim under the CPA because Plaintiffs' CEMA claim fails. *Virtumundo*, 575 F.3d at

8  1065; *Taie v. Ten Bridges LLC*, 704 F. Supp. 3d 1147, 1154 (W.D. Wash. 2023) (dismissing CPA

9  claim where underlying statutory claim failed).

10  **V.**      **CONCLUSION**

11        For the foregoing reasons, Macy's respectfully requests that this Court dismiss Plaintiffs'

12  Complaint for failure to state a claim upon which relief may be granted.

13

14        I certify that this memorandum contains 6,449 words, in compliance with the Local Civil

15  Rules.

16

17  Dated: December 5, 2025          BENESCH, FRIEDLANDER, COPLAN &
                        ARONOFF LLP

18

19                          By: */s/ Meegan B. Brooks*

20                            Meegan B. Brooks
                          Attorneys for Defendant

21

22

23

24

25

26

27

28

MACY'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 23
Case No. 2:25-cv-02006-JHC

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5828