The Honorable John H. Chun

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE AGNEW, FELISA BRYANT, DEBORAH CERKEZOGLU, AZA ZHAMBEKOVA, and SHAWNA STUMP, on their own behalf and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br><br>     and<br><br>STATE OF WASHINGTON,<br><br>                  Plaintiff-Intervenor,<br><br>    v.<br><br>MACY'S RETAIL HOLDINGS, LLC,<br><br>                  Defendant. | NO. 2:25-cv-02006-JHC<br><br>PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT MACY'S RETAIL HOLDINGS, LLC'S MOTION TO DISMISS<br><br>Note for Motion Calendar:<br>February 9, 2026 |

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION ................................................................................................ 1

3    II.    BACKGROUND .................................................................................................. 2

4    III.    ARGUMENT .................................................................................................... 2

5         A.    CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject

6              Lines ................................................................................................................ 3

7              1.    A plaintiff need not plead common law tort elements to avoid preemption ...... 4

8              2.    A plaintiff need not specifically plead fraud to avoid preemption .................... 8

9              3.    Applying Rule 9(b)'s heightened pleading standards is inconsistent with

              the CPA ............................................................................................................. 10

10             4.    CEMA complements CAN-SPAM ................................................................ 11

11        B.    CEMA Does Not Violate the Dormant Commerce Clause ..................................... 12

12             1.    The Supreme Court rejected Macy's per se extraterritoriality argument in

              2023 .................................................................................................................... 13

13             2.    Macy's does not allege and cannot establish discrimination under the

14             dormant Commerce Clause .............................................................................. 17

15             3.    Macy's cannot establish a significant burden on interstate commerce nor

              that any such burden outweighs CEMA's benefits to consumers .................... 18

16   IV.    CONCLUSION .................................................................................................. 23

17

18

19

20

21

22

23

24

25

26

1

## TABLE OF AUTHORITIES

2

### <u>Cases</u>

3

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
   107 F.4th 934 (9th Cir. 2024) ............................................................ 4

4

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
   622 F. Supp. 2d 935 (N.D. Cal. 2009) ......................................... 8, 11

5

6

*Asis Internet Servs. v. Member Source Media, LLC*,
   No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ................................. 8

7

*Asis Internet Servs. v. Subscriberbase Inc.*,
   No. 09-3503SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ............................. 9, 12

8

*Baertschi v. Jordan*,
   413 P.2d 657 (Wash. 1966) ............................................................ 10

9

10

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
   777 F.3d 712 (4th Cir. 2015) ........................................................... 9

11

*Black Star Farms LLC v. Oliver*,
   600 F.3d 1225 (9th Cir. 2010) ................................................... 17, 18

12

13

*Brown & Williamson Tobacco Corp. v. Pataki*,
   320 F.3d 200 (2d Cir. 2003) ........................................................... 19

14

*Brown v. Old Navy, LLC*,
   567 P.3d 38 (Wash. 2025) ......................................................... 6, 13

15

16

*Brummet v. Washington's Lottery*,
   288 P.3d 48 (Wash. Ct. App. 2012) ................................................. 7

17

*Carmickle v. Comm'r, Soc. Sec. Admin.*,
   533 F.3d 1155 (9th Cir. 2003) ....................................................... 17

18

19

*Conway v. Taylor's Ex'r*,
   66 U.S. 603 (1862) ....................................................................... 12

20

*Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,
   391 P.3d 582 (Wash. App. 2017) ................................................... 10

21

22

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ..................................................................... 16

23

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ....................................................................... 11

24

25

*Ferguson v. Friendfinders, Inc.*,
   94 Cal. App. 4th 1255 (2002) ....................................................... 20

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- ii
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Gen. Motors Corp. v. Tracy*,
   519 U.S. 278 (1997)..................................................................................... 18

*Gordon v. Impulse Mktg. Grp., Inc.*,
   375 F. Supp. 2d 1040 (E.D. Wash. 2005)..................................................... 10

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ............................................................... passim

*Harbers v. Eddie Bauer, LLC*,
   415 F. Supp. 3d 999 (W.D. Wash. 2019) ..................................................... 10

*Harrington v. Vineyard Vines, LLC*,
   No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025),
   *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134
   (W.D. Wash. Jan. 16, 2026)................................................................... 1, 4, 6

*Healy v. Beer Institute, Inc.*,
   491 U.S. 324 (1989)................................................................. 13, 14, 15, 16

*Heft v. Moore*,
   351 F.3d 278 (7th Cir. 2003) ....................................................................... 17

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
   76 F.4th 1164 (9th Cir. 2023) ....................................................................... 7

*Hickey v. Voxernet LLC*,
   887 F. Supp. 2d 1125 (W.D. Wash. 2012) ..................................................... 3

*Hoang v. Reunion.com, Inc.*,
   No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ............... 8

*Hypertouch Inc. v. ValueClick, Inc.*,
   123 Cal. Rptr. 3d 8 (Cal. App. 2011)......................................................... 9, 10

*In re Park W. Galleries, Inc.*,
   No. MDL 09-2076RSL, 2010 WL 56044 (W.D. Wash. Jan. 5, 2010)............... 22

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015) ....................................................................... 12

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
   No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009)............... 6

*Keithly v. Intelius Inc.*,
   764 F. Supp. 2d 1257, (W.D. Wash. 2011),
   *on reconsideration*, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. 2011) .......... 7

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
   48 F.3d 391 (9th Cir. 1995) ....................................................................... 19

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- iii
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Kleffman v. Vonage Holdings Corp.*,
   No. CV 07-2406GAFJWJX, 2007 WL 1518650 (C.D. Cal. May 23, 2007) ........................ 9

*Ma v. Nike, Inc.*,
   No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026) ................................ 1, 4, 8

*Martin v. CCH, Inc.*,
   784 F. Supp. 2d 1000 (N.D. Ill. 2011) .......................................................................... 7, 8

*Martin v. Miller*,
   600 P.2d 698 (Wash. Ct. App. 1979) ................................................................................ 7

*Martins v. Vermont Mut. Ins. Co.*,
   92 F.4th 325 (1st Cir. 2024) ........................................................................................... 11

*MaryCLE, LLC v. First Choice Internet, Inc.*,
   890 A.2d 818 (Md. Ct. Spec. App. 2006) .................................................................. 14, 20

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) .......................................................................................................... 3

*Meilleur v. AT & T Inc.*,
   No. 11–1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) .................................... 3

*Minnesota v. Clover Leaf Creamery Co.*,
   449 U.S. 456 (1981) ........................................................................................................ 22

*Mitchell v. Atkins*,
   483 F. Supp. 3d 985 (W.D. Wash. 2020), *vacated and remanded on other grounds by*
   *Michell v. Atkins*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022) .................... 17

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
   682 F.3d 1144 (9th Cir. 2012) ........................................................................................ 21

*Nat'l Pork Producers Council v. Ross*,
   6 F.4th 1021 (9th Cir. 2021) ........................................................................................... 20

*National Pork Producers Council v. Ross*
   598 U.S. 356 (2023) ................................................................................................. passim

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447(1978) ......................................................................................................... 22

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
   469 F.3d 348 (4th Cir. 2006) ................................................................................. 4, 5, 6, 9

*Panag v. Farmers Ins. Co. of Wash.*,
   204 P.3d 885 (Wash. 2009) ......................................................................................... 7, 10

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................................................ 16

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- iv
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ............................................................................................ 18, 21

*Rocky Mtn. Farmers Union v. Corey*,
   730 F.3d 1070 (9th Cir. 2013) ............................................................................... 17

*Rosenblatt v. City of Santa Monica*,
   940 F.3d 439 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020)........................ 18, 19

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) ............................................................................... 13

*Scott v. Cingular Wireless*,
   161 P.3d 1000 (Wash. 2007) ................................................................................. 2

*State Farm Fire & Cas. Co. v. Huynh*,
   962 P.2d 854 (Wash. App. 1998) .......................................................................... 10

*Stengel v. Medtronic*,
   704 F.3d 1224 (9th Cir. 2013) ............................................................................... 3

*Stieneke v. Russi*,
   190 P.3d 60 (Wash. App. 2008) ............................................................................ 10

*Storey v. Amazon.com Servs. LLC*,
   No. C23-1529-KKE, 2024 WL 2882270 (W.D. Wash. June 7, 2024) ...................... 7, 8

*Strassheim v. Daily*,
   221 U.S. 280 (1911) ............................................................................................. 16

*Sullivan v. Oracle Corp.*,
   662 F.3d 1265 (9th Cir. 2011) ............................................................................... 18

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
   No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020) .............. 3

*Truesdell v. Friedlander*,
   80 F.4th 762 (6th Cir. 2023) ................................................................................. 21

*United Res. Sys., Inc. v. Wilson*,
   614 F. Supp. 3d 243 (D.S.C. 2022) ........................................................................ 15

*Universal Health Servs., Inc. v. United States*,
   579 U.S. 176 (2016) ............................................................................................. 7

*Valley Bank of Nev. v. Plus Sys., Inc.*,
   914 F.2d 1186 (9th Cir. 1990) ............................................................................... 13

*Wagner v. Spire Vision*,
   No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ...................... 8

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- v
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Ward v. United Airlines, Inc.*,
    986 F.3d 1234 (9th Cir. 2021) ............................................................................. 20

*Washington Bankers Ass'n v. State*,
    495 P.3d 808 (Wash. 2021) .................................................................................. 20

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442, 449 (2008) ..................................................................................... 13

*Washington v. Heckel*,
    24 P.3d 404 (Wash. 2001) *cert. denied*, 534 U.S. 997 (2001) ....................... 14, 21

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) .................................................................. 7

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985) ............................................................................................. 22

**Statutes**

15 U.S.C. § 7704(a)(2) ............................................................................................. 11

15 U.S.C. § 7707(b)(1) ............................................................................................... 3

15 U.S.C. § 7707(b)(2) ............................................................................................. 11

1998 Wash. Sess. Laws 517 ...................................................................................... 22

28 U.S.C. § 2403(b) .................................................................................................... 2

Wash. Rev. Code § 19.190.020(1) ............................................................................ 13

Wash. Rev. Code § 19.190.020(1)(a) ......................................................................... 5

Wash. Rev. Code § 19.190.020(1)(b) .................................................................. passim

Wash. Rev. Code § 19.190.030(1)(b) ........................................................................ 10

Wash. Rev. Code § 19.190.030(3) ...................................................................... 21, 22

Wash. Rev. Code § 19.86.920 ................................................................................... 11

**Other Authorities**

H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on
    H.B. 2752 (Wash. 1998) ........................................................................................ 2

S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess.,
    Senate Bill Report on H.B. 1037 (Wash. 1999) ..................................................... 2

S. Rep. No. 108-102 (2003) ................................................................................. 5, 19

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1

## **Constitutional Provisions**

2

U.S. Const. art. VI, cl. 2............................................................................................................ 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- vii
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# I.    INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant Macy's Retail Holdings, LLC (Macy's) tries to impose on plaintiffs a heightened fraud standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. Macy's cited authority does not support its argument that CEMA plaintiffs must plead fraud or another tort to avoid preemption, nor does Macy's acknowledge the many courts that have rejected that argument.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. Macy's arguments misunderstand federal constitutional law and the operation of the interconnected modern economy. Moreover, the United States Supreme Court recently expressly—and unanimously—rejected Macy's argument in *National Pork Producers Council v. Ross*.[1] This Court should deny Macy's motion, just as it has denied similar efforts in two recent orders. *See Harrington v. Vineyard Vines, LLC*, No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).

---

[1] 598 U.S. 356, 371 (2023).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 1
(2:25-cv-02006-JHC)

## II.    BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belong to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

## III.    ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiff's response brief. Dkt. 17 at 3-24. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 2
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**A.      CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

Preemption is a constitutional issue warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up). Macy's, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming this starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.*, No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

As relevant here, CAN-SPAM's preemption clause is limited and focused on state laws creating liability for mere non-deceptive errors or omissions. While the clause states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email

that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). This plain language should end the analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").

      **1.**    **A plaintiff need not plead common law tort elements to avoid preemption**

Despite CAN-SPAM's plain language, Macy's presses a restrictive reading of the preemption clause, asserting it saves "only" traditional tort theories like fraud from preemption. Dkt. 15 at 13 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with Macy's own authorities—none of which state "only" tort claims are exempt.

Over sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause as an issue of first impression in this circuit, relying in part on the then-only federal circuit court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo,* 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts like fraud are the "only" state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious or wrongful conduct." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting Macy's arguments, *Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing the legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Thus, as this Court has already observed, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2 (same). This conclusion is likewise supported by the Senate Report accompanying CAN-SPAM, which explained that although the purpose of the CAN-

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 4
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    SPAM Act was to impose a single national standard for the content of commercial e-mail,

2    "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because

3    they target behavior that a legitimate business trying to comply with relevant laws would not be

4    engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

5         In any event, *Virtumundo* did not directly address deceptive email subject lines. Instead,

6    it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision

7    (1)(a), which prohibits email that "misrepresents or obscures" information about the sender.

8    Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. In any event, unlike

9    this case, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him

10   "in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been

11   "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-1064. The Ninth

12   Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions

13   are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064.

14   Understandably, the court concluded that to the extent that provision (1)(a) addressed non-

15   deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or

16   deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was

17   focused on state law claims that could potentially impose strict liability for "insignificant

18   inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in

19   contrast, is about provision 1(b), which <u>only</u> prohibits "false or misleading information" and

20   cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not

21   support preemption.

22        Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory

23   framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than

24   non-deceptive acts or mere clerical errors. *Id*. at n.17. When the Ninth Circuit decided

25   *Virtumundo* in 2009, however, it observed that how narrowly or broadly to interpret CEMA was

26   unsettled. 575 F.3d at 1059. The *Virtumundo* court thus concluded that "state courts may

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 5
(2:25-cv-02006-JHC)

1   ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in

2   conformity with federal legislation." *Id*. at 1059. Last year, following certification from this

3   Court, the Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*,

4   567 P.3d 38, 47 (Wash. 2025).

5           In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere

6   technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision

7   addresses deceptive "representations of fact—like the duration or availability of a promotion, its

8   terms and nature, the cost of goods, and other facts Washington residents would depend on in

9   making their consumer decisions." *Id. Brown* thus addressed the concern the *Omega* court had

10  in 2006 that Macy's now relies on: that the preemption exemption might be allowed to "sweep

11  up" mere "errors." Dkt. 15 at 13, 16 (quoting *Omega*). As this Court recently recognized, *Brown*

12  harmonizes CEMA with CAN-SPAM by making clear that rather than targeting mere errors,

13  CEMA's subject line provision prohibits false or deceptive statements about facts that would be

14  important to consumer decision making. *See Harrington,* 2025 WL 3677479, at *1.

15          Tellingly, Macy's does not meaningfully address the *Brown* opinion, instead arguing that

16  Plaintiff "must show that the challenged subject lines mattered to *their own* purchasing

17  decisions" to survive preemption. Dkt. 15 at 14 (emphasis in original). This argument for

18  pleading individualized reliance cannot stand after *Brown*, where the Washington State Supreme

19  Court held that CEMA's subject line provision does not target puffery or "banal hyperbole" and

20  instead allows for claims premised upon misrepresentations of fact to Washington consumers.

21  567 P.3d at 47; *see also Harrington*, 2025 WL 3677479, at *1 (same, quoting *Brown*). Nothing

22  in the *Brown* or *Harrington* opinions requires an individualized assessment or pleading of

23  reliance by each plaintiff.

24          Macy's reliance upon *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR,

25  2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009), to support its argument is mystifying.

26  Dkt. 15 at 16. In that case, Judge Robart rejected the very same argument that Macy's advances

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 6
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    here, i.e., that a plaintiff is required to allege all elements of fraud to bring a CEMA claim.

2    Macy's citations to *Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979) and *Hendrix ex*

3    *rel. United States v. J-M Mfg. Co., Inc*., 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023), fare no better.

4    Those cases dealt with actual fraud claims and speak to their elements, not CEMA.

5    　　　This Court should likewise decline Macy's tacit invitation to substitute Macy's view that

6    email-subject lines are unlikely to influence consumers for the Washington State Supreme

7    Court's interpretations of Washington State law. First, at the Rule 12 stage, the Court must accept

8    all of Plaintiffs' well-pled allegations as true for purposes of ruling on Macy's motion.

9    Nevertheless, when evaluating the tendency of language to deceive for a CPA claim (like those

10   under CEMA), Washington courts look "not to the most sophisticated [consumers] but rather to

11   the least." *Panag v. Farmers Ins. Co. of Wash*., 204 P.3d 885, 895 (Wash. 2009) (citation

12   omitted); *Keithly v. Intelius Inc*., 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011), *on*

13   *reconsideration*, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. 2011) (while some

14   consumers might not be fooled, "not everyone is so wary and/or detail-oriented, nor is the CPA

15   designed to protect only those who need no protection. The capacity of a marketing technique to

16   deceive is determined with reference to the least sophisticated consumers among us.").

17   　　　Macy's cherry-picked quotations from other cases strung together to support the contrary

18   idea that email subject lines (including those likely creating false urgency to buy) do not "alter

19   the fundamentals of the transaction" should be rejected. Dkt. 15 at 15. Macy's cited cases for the

20   argument that subject lines cannot really influence "reasonable" consumers' purchasing are

21   unavailing. Dkt. 15 at 15 citing *Martin v. CCH, Inc., 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011);

22   *Brummet v. Washington's Lottery*, 288 P.3d 48, 54 (Wash. Ct. App. 2012); *Workman v. Plum*

23   *Inc*., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015), *Universal Health Servs., Inc. v. United States*,

24   579 U.S. 176, 193, n.5 (2016); *Storey v. Amazon.com Servs. LLC*, No. C23-1529-KKE,

25   2024 WL 2882270, at *6 (W.D. Wash. June 7, 2024). *Storey* addressed a CPA claim about

26   Amazon's Guaranteed Delivery contract terms and there, the plaintiff failed to even allege the

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 7
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

terms were confusing. *Storey*, 2024 WL 2882270, at *6. *Workman*, *Universal Health*, and *Brummet* pre-date *Brown*, and none of them address commercial email, CEMA, or CAN-SPAM. Finally, *Martin*, like *Virtumundo*, addresses preemption of technical claims regarding missing information about the email sender and does not conclude all claims regarding <u>deceptive subject lines</u> are preempted. *See Martin*, 784 F. Supp. 2d at 1006 (suggesting only in dicta that some technical claims regarding "incomplete" or "less than comprehensive" subject lines would also likely be preempted).

**2.    A plaintiff need not specifically plead fraud to avoid preemption**

Macy's spends considerable time addressing the elements of fraud in its motion. Dkt. 15 at 13-17, 21. But consumer protection statutes such as CEMA do not sound in fraud, and "[t]he great weight of district court and state court decisions" reject a requirement that consumers plead "all the elements of common law fraud," including damages or reliance, to avoid preemption of their anti-spam law claims. Dkt. 20 (containing order from *Ma*, 2026 WL 100731, at *3 (addressing this very issue and concluding plaintiff need not plead reliance, injury or materiality to avoid preemption)); *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal. Mar. 3, 2014) (collecting cases regarding the same); *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege detrimental reliance was not proper grounds for dismissal); *see also* Dkt. 17 at 3-9 (analyzing additional authority holding the same). Congress explicitly chose not to use the word "fraud" in the CAN-SPAM preemption provision at issue here, even though it did in the very next provision. *Ma*, 2026 WL 100731, at *3 (citing *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009)

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 8
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    ("Congress . . . is certainly familiar and with the word 'fraud' and choose not to use it; the words

2    'falsity *or* deception' suggest broader application . . . Congress utilized the word 'fraud' in the

3    very next subsection but not in the savings clause.") (citation omitted); *Asis Internet Servs. v.*

4    *Subscriberbase Inc.*, No. 09-3503SC, 2010 WL 1267763, at *11 (N.D. Cal. Apr. 1, 2010) ("The

5    explicit language of the preemption clause betrays no intention by Congress to limit state

6    regulation to the simple codification of common law fraud in its purest form.")). This Court

7    should not impose extraneous non-statutory fraud standards here.

8    CEMA's prohibition on false or misleading subject lines, like similar consumer

9    protection statutes, reflects policy decisions about wrongful conduct for which there was no

10    common law tort remedy. A plaintiff need not allege the elements of fraud because the statute

11    has already defined the wrongful behavior.[2]

12    For similar reasons, the Fourth Circuit concluded that neither California nor Maryland's

13    anti-spam statutes were preempted despite neither one requiring pleading or proof of the

14    elements of fraud. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015)

15    (citing *Omega*, 469 F.3d 348). Looking at Maryland's statute, the court found that the state

16    appellate court's earlier conclusion that violations of the anti-spam statute, "like violations of

17    the Consumer Protection Act," impose liability for wrongful conduct similar to tort, was

18    sufficient to avoid preemption. *Id*. at 717. Turning to California's statute, the Fourth Circuit

19    likewise noted that (like *Brown*), a state appellate court "limit[ed] the application of California's

20    anti-spam law to deceptive emails" and therefore was not preempted. *Id.* (quoting *Hypertouch*

21    *Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8 (Cal. App. 2011)). The *Hypertouch* Court had already

22    held California's anti-spam law "dispenses with many of the elements associated with common

---

23    [2] CEMA's requirement of falsity or deception (i.e., wrongdoing) distinguishes Macy's

24    cited authority. Dkt. 15 at 13 (citing *Virtumundo* and *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, at *2-3 (C.D. Cal. May 23, 2007)). *Kleffman* addressed

25    missing information in the email sender line, while the plaintiff conceded the sender line "literally and truthfully" identified defendant as sender and made no allegations of false or misleading statements. 2007

26    WL 1518650, at *2.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 9
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    law fraud." *Hypertouch*, 123 Cal. Rptr. 3d. This and other courts have rejected Macy's proposed

2    rule that the elements of fraud must be pled to avoid preemption. This Court, too, made a similar

3    finding when concluding a plaintiff had Article III standing when making a CEMA claim: "[t]he

4    harms resulting from deceptive commercial e-mails resemble the type of harms remedied by

5    nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008

6    (W.D. Wash. 2019). The Court should likewise reject Macy's effort to impose additional

7    pleading requirements on CEMA plaintiffs.

8        **3.    Applying Rule 9(b)'s heightened pleading standards is inconsistent with the
9             CPA**

10        Macy's argument also runs counter to the CPA. A CEMA subject-line provision violation

11    is a per se CPA violation. Wash. Rev. Code § 19.190.030(1)(b). A CPA claim is not a

12    fraud-based cause of action: "[t]he CPA significantly differs from traditional common law

13    standards of fraud and misrepresentation." *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,

14    391 P.3d 582, 587 (Wash. App. 2017). Thus, despite Macy's argument that Plaintiff is required

15    to plead the elements of these tort claims (Dkt. 15 at 11, 13), Rule 9(b) is inapplicable to both

16    the CPA and CEMA. *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048

17    (E.D. Wash. 2005) (explaining a claim under CEMA and CPA did not sound in fraud because

18    the claims required different elements and holding CEMA claims "do not trigger the heightened

19    pleading requirements of Rule 9(b)."). Indeed, the elements and burden of proof are materially

20    different between CPA claims and fraud.

21        A private CPA violation requires five elements, *Panag*, 204 P.3d at 889, while fraud has

22    nine, *Stieneke v. Russi*, 190 P.3d 60, 69-70 (Wash. App. 2008) (quotation omitted). A CPA

23    violation (and, thus, a CEMA violation) is established with the standard civil evidentiary burden

24    of "preponderance of the evidence," while fraud is subject to the higher "clear, cogent, and

25    convincing" burden. *E.g.*, *Baertschi v. Jordan*, 413 P.2d 657, 660 (Wash. 1966) (fraud claim);

26    *State Farm Fire & Cas. Co. v. Huynh*, 962 P.2d 854, 863 (Wash. App. 1998) (fraud and CPA

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 10
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1  claims). Indeed, no Washington appellate court has ever held that a CPA claim (whether direct

2  or per se) sounds in fraud or has required a heightened fraud pleading standard. Federal courts

3  can impose pleading standards, but they cannot add elements to state law claims nor change the

4  substantive evidentiary burdens of state law claims as Macy's urges. *See, e.g.*, *Martins v.*

5  *Vermont Mut. Ins. Co.*, 92 F.4th 325, 328 (1st Cir. 2024) (citing *Erie R. Co. v. Tompkins*,

6  304 U.S. 64, 78 (1938)).

7       Finally, the CPA must be liberally construed to protect consumers.

8  Wash. Rev. Code § 19.86.920. Applying fraud standards to a per se CPA claim—like a CEMA

9  subject line provision violation—conflicts with Washington's liberal construction mandate.

10      **4.    CEMA complements CAN-SPAM**

11      Macy's preemption argument also undermines Congress' purpose in enacting

12  CAN-SPAM. A preemption analysis is "guided by the oft-repeated comment that the purpose of

13  Congress is the ultimate touchstone in every preemption case." *Virtumundo*,

14  575 F.3d at 1060 (cleaned up). Here, CEMA's subject line provision aligns with Congress'

15  purpose in enacting CAN-SPAM—a purpose which would not be served by preempting or

16  narrowing CEMA. Congress enacted CAN-SPAM in 2003 to "curb the negative consequences

17  of spam and spamming practices without stifling legitimate commerce." *Id*. at 1045.

18  CAN-SPAM's prohibition on deceptive or misleading information in email subject lines is one

19  means of accomplishing this purpose. 15 U.S.C. § 7704(a)(2). CEMA's subject line provision

20  supports this same goal by prohibiting "false or misleading" information in email subject lines.

21  Wash. Rev. Code § 19.190.020(1)(b). Congress chose to expressly save such state law claims

22  regarding "falsity or deception" from preemption without requiring plaintiffs to plead "fraud."

23  Again, as one court observed, Congress "is certainly familiar with the word 'fraud'" but chose

24  not to use it even though it "utilized the word 'fraud' in the very next subsection but not in the

25  savings clause." *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942 (citing 15 U.S.C.

26  § 7707(b)(2)).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 11
(2:25-cv-02006-JHC)

1    Finally, requiring higher, more stringent pleading standards for claimants does not serve

2    any congressional purpose. *Subscriberbase Inc.*, 2010 WL 1267763, at *11-12 (stating the focus

3    of CAN-SPAM is on the "behavior of advertisers," and "adding the traditional fraud elements

4    of reliance and damages does not add anything to Congress's efforts to create a uniform system

5    of regulation governing email advertisements"). Macy's argument undermines, rather than

6    protects, the federal interest in CAN-SPAM.

7    **B.    CEMA Does Not Violate the Dormant Commerce Clause[3]**

8    Macy's Commerce Clause argument is likewise contrary to governing authority. Macy's

9    first argument—which asks this Court to invalidate state law for its extraterritorial *impact* based

10   on mere speculation and hypotheticals—relies on a line of cases that is of limited value following

11   the Supreme Court's decision in *National Pork Producers Council v. Ross*, 598 U.S. 356, 368

12   (2023). But state laws only violate the dormant Commerce Clause when they discriminate in

13   favor of their own residents and economic interests, to the detriment of out-of-state residents or

14   interests. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015).

15   "Preventing state officials from enforcing a democratically adopted state law in the name of the

16   dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only

17   'where the infraction is clear.'" *Nat'l Pork Producers*, 598 U.S. at 390 (quoting *Conway v.*

18   *Taylor's Ex'r*, 66 U.S. 603, 634 (1862)). Thus, federal courts must utilize "extreme caution"

19   before deploying the "implied authority" of the dormant Commerce Clause. *Nat'l Pork*

20   *Producers*, 598 U.S. at 390 (internal quotation marks omitted). Applying the correct standard,

21   Macy's fails to show that CEMA is discriminatory or to otherwise show that CEMA substantially

22   burdens interstate commerce.

23

24

25

26   _____

    [3] The State joins in Plaintiffs' arguments regarding the dormant Commerce Clause. Dkt. 17
    at 14-24.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 12
(2:25-cv-02006-JHC)

1          **1.     The Supreme Court rejected Macy's per se extraterritoriality argument in**
2          **2023**

3          Macy's primary dormant Commerce Clause challenge to CEMA is a facial challenge
4     asserting that CEMA directly controls commerce occurring entirely outside Washington's
5     borders. *See* Dkt. 15 at 18-19. In support, Macy's relies primarily upon *Healy v. Beer Institute,*
6     *Inc.*, 491 U.S. 324, 336 (1989), and other cases relying on *Healy*, for the claim that such statutes
7     are "per se invalid." Dkt. 15 at 18 (quoting *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320,
8     1323 (9th Cir. 2015) and *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th
9     Cir. 1990)). But Macy's reliance on the *Healy* line of cases is misplaced for two reasons.

10         First, Macy's argument that CEMA directly controls commerce occurring entirely out of
11    Washington is based upon self-serving claims about what Macy's thinks CEMA covers
12    (asserting CEMA regulates "emails to a Missouri resident who created an email address while
13    living or attending college in Washington twenty years ago"). Dkt. 15 at 19. Macy's speculation
14    underscores why facial challenges are so disfavored. *See Washington State Grange v.*
15    *Washington State Republican Party*, 552 U.S. 442, 449, 450–51 (2008) (facial challenges are
16    disfavored because they "often rest on speculation," "run contrary to the fundamental principle
17    of judicial restraint" and "threaten to short circuit the democratic process"). Macy's arguments
18    ignore the plain language of CEMA, which requires either (1) "a computer located <u>in</u>
19    <u>Washington</u>" or (2) "an electronic mail address that the sender knows, or has reason to know, is
20    held by <u>a Washington resident</u>." Wash. Rev. Code § 19.190.020(1) (emphasis added). A
21    "Washington resident" is not a "Missouri resident," and Macy's attempt to conflate the two is
22    not credible.

23         Further, Macy's concern that a Washington resident may receive an email while
24    temporarily in another location such that the email may not have "actually entered into
25    Washington," Dkt. 15 at 18-19, ignores the clear Washington connection CEMA requires—the
26    requirement the email is sent to a Washington resident. *See, e.g.*, *Brown*, 567 P.3d at 45 (CEMA

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 13
(2:25-cv-02006-JHC)

1    "targets a specific deceptive commercial practice: sending Washington residents commercial

2    e-mails that contain 'false or misleading information in the subject line[s].'") (quoting

3    Wash. Rev. Code § 19.190.020(1)(b)). This scenario does not offend the Constitution, and

4    Macy's hypotheticals cannot change the fact that Wash. Rev. Code § 19.190.020(1)(b) is

5    focused upon activity targeting Washington consumers. By contrast, Plaintiff correctly notes that

6    courts have upheld dormant Commerce Clause challenges to CEMA and similar statutes.

7    Dkt. 17 at 17, 20-21 (citing *Washington v. Heckel*, 24 P.3d 404, 409 (Wash. 2001) *cert. denied*,

8    534 U.S. 997 (2001); *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 842 (Md. Ct.

9    Spec. App. 2006)). Simply put, a company that directs its commercial email to Washington

10   residents does not get a free pass from compliance with Washington law when the resident is

11   temporarily traveling out of state.

12       Second, given the unquestionable connection to Washington residents, Macy's argument

13   goes to CEMA's alleged extraterritorial *impact*, which is an insufficient basis to invalidate a

14   state law under the dormant Commerce Clause.[4] In *National Pork Producers*, the United States

15   Supreme Court unanimously rejected the idea that *Healy* stands for the almost per se rule against

16   extraterritoriality that Macy's advocates for here. 598 U.S. at 368. Macy's fails to even discuss

17   *National Pork Producers*' analysis of *Healy* or to acknowledge that it is dispositive of its

18   arguments.

19       There is no blanket rule against state statutes with extraterritorial effects. If there was

20   such a rule, it is hard to imagine how the interconnected modern economy would continue to

21   function. *Nat'l Pork Producers*, 598 U.S. at 374-75 ("In our interconnected national

22   marketplace, many (maybe most) state laws have the 'practical effect of controlling'

23   extraterritorial behavior."). It is true that historically, courts observed that the extraterritorial

24   application of certain state laws raised dormant Commerce Clause concerns. In *Healy*, the

25

26   ───────────────

     [4] For this reason, the State agrees with Plaintiff that Macy's reliance upon *Healy*'s progeny is
     incorrect. Dkt. 17 at 17-18.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 14
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Supreme Court noted that in some situations "a statute that directly controls commerce occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting State's authority." 491 U.S. at 336. Under *Healy*, then, such legislation may have the "practical effect . . . [of] control[ing] conduct beyond the boundaries of the State." *Id.* In the years that followed, some courts read *Healy* to mean that in addition to the classic tests for dormant Commerce Clause challenges (*see* Part B(2), *infra*), there existed a separate rule prohibiting statutes with extraterritorial effects. *See, e.g.*, *United Res. Sys., Inc. v. Wilson*, 614 F. Supp. 3d 243, 256 (D.S.C. 2022).

In 2023, however, the Supreme Court clarified that extraterritorial effects alone do not violate the dormant Commerce Clause. Petitioners in *National Pork Producers v. Ross* challenged California's law governing farm conditions for pork sold in California. Petitioners conceded the law did not "seek[] to advantage in-state firms or disadvantage out-of-state rivals." *Nat'l Pork Producers*, 598 U.S. at 370. According to the Court, this left them in a "tough spot" pursuing "two more ambitious theories." *Id.* at 371.

> In the first, petitioners invoke what they call "extraterritoriality doctrine." They contend that our dormant Commerce Clause cases suggest an additional and "almost *per se*" rule forbidding enforcement of state laws that have the "practical effect of controlling commerce outside the State," even when those laws do not purposely discriminate against out-of-state economic interests. Petitioners further insist that Proposition 12 offends this "almost *per se*" rule because the law will impose substantial new costs on out-of-state pork producers who wish to sell their products in California.

*Id.* (citations omitted). In support of those arguments, petitioners cited *Healy*, the same case Macy's relies on here.

The Court then squarely rejected the argument that *Healy* stands for the *per se* proposition that laws with extraterritorial effects violate the dormant Commerce Clause. Concluding that "petitioners read too much into too little," the Court explained that the challenged statutes in *Healy* and other extraterritoriality cases "had a *specific* impermissible 'extraterritorial effect'—they deliberately 'prevent[ed out-of-state firms] from undertaking

competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess.'" *Nat'l Pork Producers*, 598 U.S. at 371 (quoting *Healy*, 491 U.S. at 338-39). Although several Justices wrote separately, "the Court unanimously disavow[ed] petitioners' 'almost per se' rule against laws with extraterritorial effects." *Id.* at 389 n.4; *see also id.* at 394 (Roberts, C.J., concurring in part); *id.* at 403, n.1 ("The Court also unanimously rejects plaintiffs' separate claim under *Healy* . . . .") (Kavanaugh, J., concurring in part).

In rejecting an almost per se rule against extraterritoriality, the Court clarified that it did not "trivialize the role territory and sovereign boundaries play in our federal system." *Nat'l Pork Producers*, 598 U.S. at 375-76. Instead, it explained that other express provisions of the Constitution, including the Due Process Clause and the Full Faith and Credit Clause may be relevant to the analysis. *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)). Those provisions are not at issue here. But even if they were at issue, they support CEMA's extraterritorial application to Washington residents temporarily outside the state's borders, because Washington undoubtedly has a state interest in protecting its consumers, including those who are temporarily outside the state. *See Phillips Petroleum Co.*, 472 U.S. at 818 (under the Due Process Clause, a state may apply its law as long as it has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"); *Nat'l Pork Producers*, 598 U.S. at 376 (observing that a State's extraterritorial reach ends at "acts committed 'outside [the first State's] jurisdiction' that are not 'intended to produce [or that do not] produc[e] detrimental effects within it") (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911)). Cases striking down laws under these provisions are limited to those instances where the challenged regulation governs extraterritorial conduct involving individuals "with *no* connection to the State." *Nat'l Pork Producers*, 598 U.S. at 376 n.1 (distinguishing *Edgar v. MITE Corp.*, 457 U.S. 624 (1982)). Accordingly, they are vastly different from CEMA, which protects Washington consumers and requires either

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS- 16 (2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1  a computer located in Washington or an email sent to a Washington resident.

2  Macy's primary dormant Commerce Clause argument does not reflect current governing law.

3    **2.    Macy's does not allege and cannot establish discrimination under the dormant Commerce Clause**

4

5  Applying the proper standard, the threshold question in the dormant Commerce Clause

6  inquiry is whether the law is discriminatory. *See Rocky Mtn. Farmers Union v. Corey*,

7  730 F.3d 1070, 1087 (9th Cir. 2013); *Nat'l Pork Producers*, 598 U.S. at 369 (stating the

8  "antidiscrimination principle lies at the 'very core' of our dormant Commerce Clause

9  jurisprudence."). In this context, the term "discrimination" has a specific meaning: "'differential

10  treatment of in-state and out-of-state economic interests that benefits the former and burdens the

11  latter.'" *Rocky Mtn. Farmers Union*, 730 F.3d at 1087 (citation omitted). Thus, "[m]ere

12  differential treatment of in-state and out-of-state interests is insufficient to establish

13  discrimination. Rather, there must be some economic benefit to in-state interests or some

14  economic burden on out-of-state interests." *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 997

15  (W.D. Wash. 2020), *vacated and remanded on other grounds by Michell v. Atkins*,

16  No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022) (citation omitted).

17  It is well established that the "party challenging the statute bears the burden of showing

18  discrimination." *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010).

19  Despite this, Macy's fails to address discrimination in its motion. For example, Macy's brief

20  does not explain how CEMA could benefit Washington economic interests at the expense of out-

21  of-state interests. Macy's has thus waived any argument on this issue. *See Carmickle v. Comm'r,*

22  *Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) (concluding an issue not argued with

23  specificity in briefing will not be addressed); *Heft v. Moore*, 351 F.3d 278, 285 (7th Cir. 2003)

24  ("The failure to cite cases in support of an argument waives the issue . . . .").

25  Even if Macy's had not waived the issue, it cannot establish discrimination. CEMA has

26  absolutely nothing to do with local economic protectionism. Discrimination under the dormant

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 17
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Commerce Clause is not an abstract notion comparing generic economic interests. Rather, "any notion of discrimination assumes a comparison of substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997); *Black Star Farms*, 600 F.3d at 1230 ("Differential treatment must be as between persons or entities who are similarly situated.") (quotation omitted). Thus, to establish discrimination under the dormant Commerce Clause, Macy's (an out-of-state company) must establish that CEMA economically disadvantages it compared to a substantially similar commercial email messenger located in Washington. Macy's briefing contains no such analysis and there is no benefit to in-state commercial email senders at the expense of out of state commercial email senders. It is just as illegal for a Washington company to send an unpermitted or misleading commercial email message to a Washington resident without prior authorization as it is for an out-of-state company to send the same email. Wash. Rev. Code § 19.190.020(1)(b) (prohibiting any "person" from sending misleading commercial emails). CEMA is a valid exercise of the State's police powers, and it evenhandedly prevents misleading commercial email messages sent to or from Washington without prior consent.

### 3.    Macy's cannot establish a significant burden on interstate commerce nor that any such burden outweighs CEMA's benefits to consumers

Because CEMA is a non-discriminatory law, it is presumptively valid unless any burden on interstate commerce is "'clearly excessive in relation to the putative local benefits.'" *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This weighing of the burden and benefits of a non-discriminatory law is often referred to as "*Pike* balancing." *See Nat'l Pork Producers*, 598 U.S. at 393 (Barrett, J., concurring). As the Ninth Circuit has recognized, "only a small number of cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory but still imposed a clearly excessive burden on interstate commerce." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (cleaned up). *Pike* balancing "does not invite courts to second-guess

legislatures by estimating the probable costs and benefits of the statute." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Rather, the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt*, 940 F.3d at 452. Macy's, as the party challenging CEMA, bears the burden on this issue. *Id.*; *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995) (stating party challenging law must "establish that the burdens that the regulation imposes on interstate commerce clearly outweigh the local benefits arising from it").

Macy's attempts to meet its burden by claiming that CEMA subjects companies to "nationwide" compliance. Dkt. 15 at 20-21. But this bold claim relies upon Macy's incorrect premise that CEMA regulates *all* email traffic with no connection whatsoever to Washington. As discussed above, that argument is neither factually nor legally sound. Macy's also vaguely asserts complying with CEMA and CAN-SPAN subjects it to "inconsistent regulatory schemes." Dkt. 15 at 20. Macy's fails to acknowledge, however, that at base both laws prohibit Macy's from sending misleading or improper emails to consumers in the United States and thus imposes no inconsistency or burden on Macy's. In any event, this argument improperly asks the Court to read out the preemption exception in CAN-SPAM. As explained herein and as detailed by the Washington Legislature, the State has its own interests in protecting Washington consumers, and the U.S. Congress has affirmatively carved out breathing room for states' traditional consumer protection statutes in this space. Again, when passing CAN-SPAM, Congress noted that although the purpose of the legislation was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003). Thus, Congress itself rejected Macy's burden argument decades ago.

Macy's next takes aim at the very thing it seeks to read out of the statute, the requirement of Washington residency, by claiming that a large, sophisticated company like Macy's could not

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS- 19 (2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    possibly determine residency information. Dkt. 15 at 20-21. In support, Macy's offers a single

2    argument that the only means by which it could assess residency would be by emailing

3    consumers and asking them to confirm their residency. *Id*. at 21. In addition to that argument

4    being technologically dubious and an improper invitation to speculate at the Rule 12 stage, it is

5    ironic that Macy's argues that it would be an undue burden to email consumers to confirm their

6    residency, while also insisting on its right to flood the same inboxes with endless promotional

7    email. This argument further fails because "[t]he mere fact that a firm engaged in interstate

8    commerce will face increased costs as a result of complying with state regulation does not, on

9    its own, suffice to establish a substantial burden on interstate commerce." *Ward v. United*

10   *Airlines, Inc.*, 986 F.3d 1234, 1241–42 (9th Cir. 2021); *see also Nat'l Pork Producers Council*

11   *v. Ross*, 6 F.4th 1021, 1032 (9th Cir. 2021) ("For dormant Commerce Clause purposes, laws that

12   increase compliance costs, without more, do not constitute a significant burden on interstate

13   commerce."); *Washington Bankers Ass'n v. State*, 495 P.3d 808, 826 (Wash. 2021) ("[E]conomic

14   hardship alone is insufficient to invalidate a law because the commerce clause protects markets,"

15   not individual entities).

16        Macy's also pointedly ignores that other states require the exact same thing as CEMA.

17   *See, e.g.*, *Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1262 (2002);

18   *MaryCLE*, 890 A.2d at 843 (Maryland antispam law "only mandates that all email addressed to

19   Maryland residents be truthful and non-deceptive"). Any hypothetical "burden" on Macy's is

20   merely the burden to comply with the law—the same burden in California and Maryland, at the

21   very least—and the solution to is simply to not send thousands of emails with false or misleading

22   subject lines. No one is forcing Macy's to send unsolicited email messages—let alone misleading

23   or deceptive email messages—to anyone, let alone to Washington consumers. Indeed,

24

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 20
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    in *Heckel*, 24 P.3d at 406, the Washington State Supreme Court held that CEMA's prohibition

2    of misleading commercial email messages "does not unduly burden interstate commerce."[5]

3          Because Macy's has failed to show that CEMA substantially burdens interstate

4    commerce, *Pike* balancing is unnecessary. The plurality opinion in *National Pork Producers*

5    "held that courts should not even attempt to quantify a state law's local 'benefits' or compare

6    those benefits to the law's costs unless a challenger has <u>first shown</u> that the law inflicts

7    'substantial burdens' on interstate commerce[.]" *Truesdell v. Friedlander*, 80 F.4th 762, 774

8    (6th Cir. 2023) (emphasis added) (citing 598 U.S. at 383-89) *cert. denied*, 144 S. Ct. 1344

9    (2024), and *cert. denied*, 144 S. Ct. 1346 (2024). Accordingly, because Macy's fails to establish

10   such burdens on interstate commerce, this Court does not need to address CEMA's local benefits.

11         Should the Court decide to complete the *Pike* balancing test, however, it bears repeating

12   that "*Pike* discusses whether the burden on interstate commerce is 'clearly excessive in relation

13   to the *putative* local benefits.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*,

14   682 F.3d 1144, 1155 (9th Cir. 2012) (quoting *Pike*, 397 U.S. at 142) (emphasis in original). *Pike*

15   "does not mention actual benefits as part of the test" for assessing a dormant Commerce Clause

16   violation. *Id.* The putative benefits of CEMA are plain: avoiding the harassment of and potential

17   cost to consumers by unwanted commercial email messages, which are "matters vitally affecting

18   the public interest." Wash. Rev. Code § 19.190.030(3). This is exactly what the Washington

19   Legislature stated when passing the law:

> The legislature finds that the volume of commercial electronic mail is growing, and the consumer protection division of the attorney general's office reports an increasing number of consumer complaints about commercial electronic mail . . . The legislature seeks to provide some immediate relief to interactive computer service providers by prohibiting the sending of commercial electronic mail messages that . . . misrepresent the message's point of origin, or contain untrue or misleading information in the subject line . . . .

---

[5] The *Heckel* court similarly recognized that extraterritoriality may implicate jurisdictional questions, but that those questions are unrelated to the dormant Commerce Clause analysis and should be analyzed under a separate framework. 24 P.3d at 412. *Heckel* was also decided before *National Pork Producers* clarified the relationship between extraterritoriality and the dormant Commerce Clause.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 21
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1  1998 Wash. Sess. Laws 517 (former Wash. Rev. Code § 19.190.005). And "[c]ourt[s] will

2  assume that the objectives articulated by the legislature are actual purposes of the statute, unless

3  an examination of the circumstances forces [courts] to conclude that they could not have been a

4  goal of the legislation." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n. 7 (1981)

5  (internal quotation omitted).

6      Additionally, a misleading commercial email message prohibited by CEMA "is an unfair

7  or deceptive act in trade or commerce and an unfair method of competition for the purpose of

8  applying the consumer protection act[.]" Wash. Rev. Code § 19.190.030(3). Federal courts have

9  recognized that states have an important interest in protecting the public from unfair and

10  deceptive business practices. *See, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460

11  (1978) (citing the "general interest in protecting consumers and regulating commercial

12  transactions" in stating that "[t]he state interests implicated in this case are particularly strong");

13  *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985)

14  (recognizing "the state's interest in preventing deception of consumers"); *In re Park W.*

15  *Galleries, Inc.*, No. MDL 09-2076RSL, 2010 WL 56044, at *4 (W.D. Wash. Jan. 5, 2010)

16  (recognizing that "the protection of consumers" "advances legitimate state interests" in the

17  dormant Commerce Clause arena). In sum, even under the *Pike* balancing test, CEMA does not

18  violate the dormant Commerce Clause.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 22
(2:25-cv-02006-JHC)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1

## IV.     CONCLUSION

2       The State respectfully requests that the Court deny Macy's constitutional challenges to

3   CEMA.

4       DATED this 3rd day of February, 2026.

5

6                                              NICHOLAS W. BROWN
                                               Attorney General

7

8                                              */s/ Claire McNamara*
                                               CLAIRE MCNAMARA, WSBA #50097
                                               BEN BRYSACZ, WSBA #54683
9                                              ROBERT HYDE, WSBA #33593
                                               Assistant Attorneys General
10                                             Attorneys for Plaintiff-Intervenor State of
                                               Washington
11                                             800 Fifth Avenue, Suite 2000
                                               Seattle, WA 98104
12                                             206-474-7744
                                               claire.mcnamara@atg.wa.gov
13                                             ben.brysacz@atg.wa.gov
                                               robert.hyde@atg.wa.gov
14

15                                             *I certify that this memorandum contains 7,485*
                                               *words, in compliance with the Local Civil Rule*

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS- 23
(2:25-cv-02006-JHC)