UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE AGNEW, FELISA BRYANT, DEBORAH CERKEZOGLU, AZA ZHAMBEKOVA, and SHAWNA STUMP, on behalf of themselves and all others similarly situated, | CASE NO. 2:25-cv-02006-JHC |
| Plaintiffs, | ORDER |
| v. | |
| MACY'S RETAIL HOLDINGS, LLC, | |
| Defendant. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiffs' Motion to Compel Further Discovery Responses and Rule 34 Inspection. Dkt. # 41. The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law. Being fully advised, for the reasons below, the Court GRANTS IN PART and DENIES IN PART the motion.

ORDER - 1

## II

### BACKGROUND

Plaintiffs filed this putative class action, claiming that Defendant violated Washington's Commercial Electronic Mail Act (CEMA), RCW 19.190.020,[1] when it sent them false or misleading marketing emails. *See generally* Dkt. # 1-1 (complaint).

On January 23, 2026, Plaintiffs served their first sets of Interrogatories, Requests for Production (RFPs), and Requests for Admission (RFAs). *See* Dkt. ## 42-1, 42-2, 42-3. On March 27, Plaintiffs served a notice informing Defendant that they intended to conduct an inspection under Federal Rule of Civil Procedure 34(a)(2) of the electronic systems that Defendant uses for its marketing campaigns. *See* Dkt. # 42-4. Defendant served responses to all three sets of requests and the Rule 34 notice on April 27. *See* Dkt. ## 42-4, 42-5, 42-6, 42-7. On June 22, 2026, Defendant responded to Plaintiffs' second set of interrogatories and RFPs, served on Defendant during the pendency of this motion. *See generally* Dkt. ## 46-3, 54 (filed under seal).

*Defendant's Objections to Interrogatories.* In its initial response, Defendant made two objections to definitions pertinent to this motion. First, Defendant objected to "the definition of 'Class Period' to the extent no class has been certified in this case and, thus, no class period has been defined by the court." Dkt. # 42-5 at 5, ¶ 2. Second, Defendant objected that many of the requests seek information regarding the Macys.com website, but that the website is operated by Macy's.com, LLC, which is not named as a defendant; Defendant Macy's Retail Holdings, LLC, manages the retail stores. *See id.* at 5, ¶ 4. This order refers to these objections as the "class objection" and the "entities objection," respectively, since they pertain. Further, the initial

---

[1] Plaintiffs also claim a violation of Washington's Consumer Protection Act (CPA), RCW 19.86.020, since any CEMA violation can be a predicate violation of the CPA. *See* Dkt. # 1-1 ¶¶ 112–14.

ORDER - 2

responses to the Interrogatories did not identify employees or third-party vendors, citing the absence of a protective order. *See id.* at 3–4 (general objection).

After entry of the parties' stipulated protective order, Dkt. # 38, and after Plaintiffs filed the present motion, Defendant supplemented their responses to Interrogatories 1, 3, 4, 5, 6, 7, 8, and 10, as it had promised to do in its original responses. *See generally* Dkt. # 53 (supplemented responses filed under seal). These supplemented responses include the identities sought by Plaintiffs in the original Interrogatories but otherwise maintained the class and entities objections. Defendant's responses to other Interrogatories remained unchanged. On June 22, 2026, the two objections reappeared in Defendant's response to Plaintiffs' Second Set of Interrogatories, served while this motion was pending. *See* Dkt. # 54 at 2, 4–5.

*Defendant's Objections to RFPs.* Plaintiffs served RFPs seeking ten categories of documents related to the planning, execution, and analytics of Defendant's email marketing campaigns, Defendant's sales and promotions advertised in those emails, and a breadth of other information. *See generally* Dkt. # 42-2. Defendant made objections on several grounds, including the entities objection (Dkt. # 42-6 at 3, ¶ 2) and the class objection (*id.* at 5, ¶ 9). Defendant, in elaborating its class objection with respect to the RFPs, said that a request for documents pertaining to class-wide issues is "unduly burdensome and disproportionate to the needs of the case at this stage" since no class has been certified. *Id.*

*Defendant's Objections to RFAs.* Plaintiffs also served 29 RFAs. Defendant made the same class objection, since the RFAs defined and used the term "Class Period," and the same entities objection. *See* Dkt. # 42-7 at 3, ¶¶ 1, 3. Defendant reiterated the entities objection in its responses to RFAs Nos. 1 through 5 and 19 through 29. *Id.* at 4–8, 12–18.

*Defendant's Objection to the Rule 34 Inspection.* Plaintiffs served a notice on Defendant seeking a remote inspection of "the systems, platforms, and tools used by Defendant to create,

ORDER - 3

manage, transmit, and track marketing or promotional emails sent to customers[.]" Dkt. # 42-4 at 3–4. Plaintiffs seek a screen-shared walkthrough conducted by Defendant, with Plaintiffs' counsel and consulting expert asking questions. *Id.* As with the prior requests, Defendant made the class and entities objections. Dkt. # 42-8 at 2–4. Defendant also objected to the request as overbroad and amounting to lead to the creation of evidence. *See id.* Ultimately, Defendant refused to permit any inspection. *See generally id.*

Plaintiffs now move to compel supplemental responses to their requests. *See generally* Dkt. # 41.

## III
### DISCUSSION[2]

A.    Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

And a party may move a court for an order compelling disclosure or discovery. *See* Fed. R. Civ. P. 37(a)(1). "The court may order a party to provide further responses to an 'evasive or incomplete disclosure, answer, or response.'" *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing Fed. R. Civ. P. 37(a)(4)). A court has "broad discretion" to permit or deny

---

[2] Plaintiffs say they satisfied Local Civil Rule 37(a)(1)'s meet-and-confer obligation by meeting with Defendant four times over videoconference between May 7 and May 18. *See* Dkt. # 42 ¶¶ 16, 15–19. Defendant responds that they only met three times, not four. *See* Dkt. # 44 ¶ 4 (citing Dkt. # 44-1 at 4–6). Defendant takes issue with the fact that Plaintiffs moved after Defendant had promised that it would supplement its responses following the conferences and after the entry of the protective order. Plaintiffs appear to satisfy the LCR 37(a)(1) requirement, regardless of Defendant's characterization of their conduct.

ORDER - 4

discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted). "Although the party seeking to compel discovery has the burden of establishing that its requests" seek relevant material, the party resisting discovery bears the burden of showing that the discovery should not be permitted. *See Doe*, 329 F.R.D. at 270 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

B.      Analysis

Plaintiffs seek an order compelling Defendant to 1) withdraw its class and entity objections and produce supplemental responses to its Interrogatories, RFPs, and RFAs; 2) issue a complete answer to Interrogatory 13, "including the nonprivileged facts of any changes made after receipt of the Complaint," with a privilege log detailing any withheld information (*see* Dkt. # 41-1 at 2, ¶ 7); and 3) permit a Rule 34 inspection along Plaintiffs' lines. Both parties also seek fees.

1.      Supplemental response to Interrogatories, RFPs, and RFAs

Plaintiffs take issue with Defendant's class and entities objections. Plaintiffs appear to structure their briefing with reference to these objections. *See* Dkt. # 41 at 7 (Section II.A., discussing the insufficiency of the class objection), 10 (Section II.B., discussing the insufficiency of the entities objection).

a.      Entities objection

Plaintiffs argue that Defendant's entities objection is deficient because "relevant information extends far beyond a website-only frame." Dkt. # 41 at 10. They ask the Court to order Defendant "to remove the website-only limitation and supplement its interrogatory answers and document responses based on all information with Defendant's possession, custody, or control, including information available through employees, agents, vendors, platforms, affiliates, and third parties acting on its behalf." *Id.* Defendant responds that it has not limited

ORDER - 5

any discovery but "preserved its rights to object to the requested discovery to the extent that Plaintiffs' requests seek information or materials available only through a separate, unnamed Macy's entity." Dkt. # 43 at 7 (citing *Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*, 2016 WL 7634440, at *3 (S.D. Cal. Mar. 10, 2016) (denying motion to compel production of documents from a non-party related to the defendant because the plaintiff did not "demonstrate that [the defendant] has possession, custody, or control over any" documents belonging to the non-party)). And it says that nothing has been withheld "on grounds that it may relate to or require the involvement of unnamed Macy's entities." Dkt. # 44 ¶ 9 (declaration of counsel).

While Plaintiffs take issue with Defendant's entities objection, they fail to identify any specific disputed discovery request associated with it. On reply, they do not address Defendant's contention that it has not withheld any information or materials because it may relate to an unnamed Macy entity. The Court will not order Defendant to respond to discovery requests where it is not clear that it withheld any information or materials that Plaintiffs seek.

b.    Class objection

Plaintiffs contend that the class objection is an attempt to "create a bifurcation regime through repeated objections that classwide or merits discovery is premature."[3] Dkt. # 41 at 8. They say that such "self-help bifurcation" is improper since only the Court may issue an order bifurcating discovery. *Id.* at 9. In any event, Plaintiffs argue, the discovery they seek is not "merits only," since discovery into Defendant's "email systems, recipient data, Washington-location data, segmentation tools, tracking and analytics, vendors, templates, promotion records,

---

[3] "Class action courts sometimes bifurcate the discovery process, enabling the parties to take discovery on certification-related issues before taking discovery on all of the merits-related issues in the case." 3 Newberg and Rubenstein on Class Actions § 10:7 (6th ed.).

ORDER - 6

and subject line practices to establish" the elements of Federal Rule of Civil Procedure 23(a).[4] *Id.* at 9. Though Plaintiffs do not say so explicitly, they appear to argue that the requested discovery is relevant since it goes to class certification issues.

Defendant responds that the discovery requests are overbroad and disproportionate to the needs of the case since they go beyond the claims of the named Plaintiffs and to class-wide issues in the absence of class certification (i.e., the class objection). *See* Dkt. # 43 at 2–3. Defendant says that bifurcation is appropriate[5] and spends much of its brief on this issue, but it also says that "the parties should be permitted to fully brief the issue for the Court." Dkt. # 42 at 3, 2–6.

The issue here is whether to overrule Defendant's class objection and permit precertification discovery. Generally, district courts "should allow discovery to aid the determination of whether a class action is maintainable," and "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), *as amended* (Aug. 27, 1985); *see also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir.1977) ("the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class allegations."). But a "court is not required, however, to find a prima facie showing under Rule 23 prior to authorizing precertification discovery." *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 168 (E.D. Cal. 2022) (citing *Kaminske v. JP Morgan Chase Bank N.A.*, 2010 WL

---

[4] Rule 23 permits a class action if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

[5] Defendant says its counsel "informed Plaintiffs' counsel that it was actively analyzing the bifurcation issue and contemplating filing a motion to bifurcate," but that Plaintiffs filed this motion before Defendant could file. *See* Dkt. # 44 ¶ 11 (declaration of Defendant's counsel).

ORDER - 7

5782995, at *2 (C.D. Cal. May 21, 2010) ("nothing in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases[.]")).  Whether to permit precertification discovery lies within the "'sound discretion of the trial court.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (quoting *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)).

These holdings counsel that Plaintiffs may take discovery intended to "produce substantiation of the class allegations," but no more.  *Mantolete*, 767 F.3d at 1424.  In the Court's view, this permits discovery that could be used to satisfy the elements of Rule 23 as well as the complaint's class allegations.  Courts in this Circuit have permitted precertification class discovery in this manner.  For example, courts routinely permit precertification class discovery to find other class members, which is relevant to numerosity, commonality, and typicality.  *See Artis v. Deere & Co.*, 276 F.R.D. 348, 351–52 (N.D. Cal. 2011) (disclosure of other potential class members' contact information is common in class litigation) (citations omitted); *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 587–88 (E.D. Cal. 2015) (same; information relevant for class certification purposes).  Courts have also permitted precertification discovery relevant to the commonality requirement that overlap significantly with merits claims, as here.  *See Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615–16 (N.D. Cal. 2011) (permitting discovery into architectural surveys of restaurants for ADA access claims); *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 300 (S.D. Cal. 2015) (permitting discovery into data of credit report disputes since it is "highly relevant to [the p]laintiffs' allegations and FRCP 23 class certification requirements"); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 502 (E.D. Cal. 2012) (permitting discovery into timekeeping and payroll records since they were relevant to employment claims "shared by putative class members").

ORDER - 8

The Court thus permits discovery going to Rule 23 and to the central class allegation in the Complaint: Whether Defendant sent emails, to Washington residents, with "subject line[s] which, based on the [sender's] actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line." RCW § 19.190.020. Thus, to substantiate the class allegations in the Complaint, what matters are the emails that were sent and whether they contained false or misleading information in their subject lines.

*Application to Disputed Interrogatories*. It is unclear which interrogatories (to which Defendant objected on precertification grounds) remain disputed by the parties. As covered above, Defendant answered each of Plaintiff's 13 Interrogatories except the final one, and then supplemented its responses after the entry of the protective order. *See generally* Dkt. # 53 (filed under seal). In Plaintiffs' motion, filed before Defendant's supplementation, Plaintiffs contended that Defendant's responses to Interrogatory Nos. 1, 3, 4, 5, and 10 were deficient, in addition to No. 13 (to which the class objection is not pertinent). *See* Dkt. # 41-1 at 2, ¶ 6. Defendant objected to each of these interrogatories, which sought names and identities, because of the absence of a protective order. As described above, when the Court entered the protective order, Defendant produced names and identities in response to these disputed interrogatories. *See generally* Dkt. # 53 (filed under seal). The Court therefore does not see any live dispute regarding Interrogatories to which Defendant made the class objection. *See Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017) (the party moving to compel "must therefore inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why . . . the responding party's objections are not meritorious.") (citation modified).

ORDER - 9

On reply, Plaintiffs argue that "[s]upplementation does not moot a motion to compel when the supplemental answers are expressly made 'subject to' the same objections the Motion challenges." Dkt. # 49 at 3. But Plaintiffs' only case, the unreported *Athwal v. Nijjer*, does not stand for the general proposition that "promises of future/in-process supplementation do not moot a motion to compel." Dkt. # 49 at 10 (citing 2018 WL 1156233, at *1 (W.D. Wash. Mar. 5, 2018)). In that case, the court determined that the motion was still live because the defendant's supplemental production remained incomplete and because they could be sanctioned. *See id.* Here, Plaintiffs do not argue that any supplementation is incomplete beyond the fact that Defendant did not strike its class and entity objections from its responses. In other words, Plaintiffs do not argue that Defendant's answers would be different if Defendant were somehow barred from making those objections.

Plaintiffs raise two other issues on reply. First, they argue that the response to Interrogatory No. 4 remains deficient because Defendant answered by cross-reference to Interrogatory Nos. 1 and 3 "without identifying who performed which function." Dkt. # 49 at 3. But Plaintiffs do not otherwise explain why this answer is deficient or why it fails to provide Plaintiffs with the information they seek. Second, Plaintiffs say that Defendant did not give time periods for when it used the vendors, platforms, and systems identified in Interrogatory Nos. 3, 5, and 10, but again fails to explain why the time period should matter. The Court therefore declines to compel supplemental responses to Interrogatory Nos. 1 through 12 (Interrogatory No. 13 is discussed below).

*Application to Disputed RFPs.* Plaintiffs do not identify which responses to RFPs are deficient. Even so, the Court rules on this branch of Plaintiffs' motion, since they appear to take issue with all of the responses and because Defendant has not stated that it has not withheld any production on the precertification grounds (unlike with respect to the entities objection).

ORDER - 10

RFP No. 1 seeks "[a]ll marketing, promotional, or advertising emails sent or caused to be sent by Defendant during the Class Period, including all associated subject lines."  Dkt. # 42-6 at 8.  Defendant objected that the "request is improper because a class has not been certified—a putative class action and any certification of a class must be limited to claims that fall within that community of interest of Plaintiffs' claims, as the class representatives."  *Id.* at 9.  But these emails could substantiate class allegations as well as help meet Rule 23 requirements, such as typicality and commonality.  Thus, Defendant must provide documents responsive to RFP No. 1.

RFP No. 2 seeks "All drafts, versions, templates, and iterations of marketing emails and subject lines used during the Class Period."  *Id.* at 9.  The allegations in the Complaint do not refer to any draft emails, and the primary class allegations cover emails sent by Defendant and received by the putative class members.  Nor do Plaintiffs explain in their briefing how unsent emails be used to prove a CEMA violation.  Thus, the Court will not compel production in response to this RFP.

The Court considers RFP Nos. 3 and 4 together.  RFP No. 3 seeks "[a]ll documents and communications concerning the creation, drafting, testing, review, approval, modification, timing, or dissemination of marketing emails or subject lines."  Dkt. # 42-6 at 10.  RFP No. 4 seeks "[a]ll documents reflecting the criteria, rules, or logic used to generate time-sensitive, urgency-based, or scarcity-based subject lines (e.g., 'ends today,' 'final hours,' 'last chance')."  *Id.* at 11.  While these documents relate to the creation of the emails with which Plaintiffs take issue, it is unclear that they could be used to substantiate class allegations, and Plaintiffs offer no explanation in their briefing.  These RFPs seek information as to Defendant's process for generating the emails that Plaintiffs say violated CEMA.  At this stage, discovery into that process does not appear to be necessary for substantiation of class allegations.  And Plaintiffs

ORDER - 11

make no specific arguments as to why they require these documents to so substantiate. Thus, the Court will not compel production in response to these RFPs.

The Court considers RFP Nos. 5 and 6 together. RFP No. 5 seeks "[a]ll documents identifying the start dates, end dates, duration, extensions, and availability of any sale, promotion, discount, or "early access" event referenced in marketing emails during the Class Period." *Id.* at 12. RFP No. 6 seeks "[a] documents sufficient to show whether and when any sale, promotion, or discount referenced as time-limited was extended, repeated, reset, or continued beyond the stated deadline." A key issue under CEMA is whether promotional emails were false or misleading. The material sought by these RFPs will likely contribute to analyzing that issue, since Plaintiffs need to know if the sales or discounts were in actuality ending, as the emails' subject lines' announced. Thus, the Court compels production in response to these RFPs.

The Court considers RFP Nos. 7, 8, and 9 together, since they concern email recipients. RFP No. 7 seeks "[d]ocuments sufficient to identify all email addresses to which Defendant sent marketing emails during the Class Period, including associated names or unique identifiers." *Id.* at 15. RFP No. 8 seeks "[d]ocuments sufficient to identify all marketing email recipients whom Defendant knew or had reason to know were/are residents of the State of Washington." *Id.* at 16. RFP No. 9 seeks "[a]ll documents sufficient to show how Defendant determines, infers, or tracks the geographic location of email recipients, including through IP address data, purchase data, account information, or third-party data sources." *Id.* at 17. The complaint makes allegations on behalf of only Washington residents. Accordingly, the information sought by RFP No. 8 could substantiate class allegations, since it could identify potential class members. *See Artis*, 276 F.R.D. at 351–52 (disclosure of other potential class members' contact information is common in class litigation). RFPs Nos. 7 and 9 go beyond that. RFP No. 7 would potentially not capture

ORDER - 12

any class-members, since Defendants could be liable only under CEMA for emails sent to addresses it "knows, or has reason to know," are held by Washington residents. *See* RCW 19.190.020(b)(2). And while RFP No. 9 may shed light on how Defendant selects email recipients, at this stage of the litigation, documents responsive to that RFP would not substantiate class allegations or provide clearly relevant information as to one of Rule 23's requirements. Thus, the Court compels production in response to RFP No. 8 but not to RFP Nos. 7 and 9.

The Court considers RFP Nos. 10, 11, and 12 together. RFP No. 10 seeks "[a]ll documents and communications concerning the Washington Commercial Electronic Mail Act (RCW 19.190)." Dkt. # 42-6 at 18. RFP No. 11 seeks "[a]ll documents and communications concerning Defendant's compliance or non-compliance with CEMA, including internal assessments, audits, or legal reviews." *Id.* at 19. RFP No. 12 seeks "[a]ll policies, procedures, guidelines, training materials, or compliance programs relating to CEMA, deceptive marketing, or consumer protection laws." *Id.* at 20. The Court struggles to see how documents responsive to these requests would substantiate class allegations or provide evidence towards the Rule 23 factors. Again, the analysis for CEMA purposes concerns the information communicated by the emails' subject lines and whether persons in Washington received them. Defendant's awareness of CEMA and its requirements, as well as compliance efforts related to CEMA, are apparently unnecessary for this analysis. Nor do Plaintiffs explain to the Court how any responsive documents would substantiate class allegations or go to Rule 23 factors. Thus, the Court will not compel production of documents in response to these RFPs.

The Court considers RFP Nos. 13 and 14 together. RFP No. 13 seeks "[a]ll documents identifying third-party vendors or platforms used for email marketing, analytics, location tracking, identity resolution, or consumer data enrichment, including but not limited to data brokers or identity resolution services." *Id.* at 21. RFP No. 14 seeks "[a] contracts, agreements,

ORDER - 13

statements of work, or communications with such third parties relating to email marketing or recipient data." *Id.* at 22.  Defendant's supplemental responses to Plaintiffs' first set of interrogatories already identify its vendors and platforms by name.  Moreover, the identities of these vendors and the details of the contracts between them and Defendant could not substantiate class allegations.  Nor would this information appear to go to any Rule 23 issue.  And Plaintiffs do not explain in their briefing how these contractual details are necessary for class certification.  Thus, the Court will not compel production of documents in response to these RFPs.

The Court considers RFP Nos. 15 and 16 together.  RFP No. 15 seeks "[a]ll documents sufficient to show Your marketing email performance, including open rates, click-through rates, conversion rates, bounce rates, unsubscribe rates, or geographic analytics." *Id.* at 23.  RFP No. 16 seeks "[a]ll documents reflecting revenue, sales attribution, conversion analysis, efficiencies, or business benefits derived from marketing emails or urgency-based subject lines." *Id.* at 24.  Again, while documents responsive to these RFPs may provide evidence that could be generally relevant to the merits of the case, they do not strike the Court as providing evidence going either to Rule 23 or towards substantiating class allegations.  These requests inquire into the commercial effectiveness of the emails that Plaintiffs say violated CEMA, as well as related strategy documents, but effectiveness goes neither to Rule 23 nor to proving a CEMA violation.  Nor do Plaintiffs explain in their briefing how the information sought by the RFPs goes to those issues.  Thus, the Court will not compel production of documents in response to these RFPs.

RFP No. 17 seeks "[a]ll documents and communications sufficient to show the effectiveness, consumer perception, legality, or risks of urgency-based or scarcity based marketing practices."  Dkt. # 42-6 at 25.  To the extent that this request seeks strategy documents (i.e., related to the "effectiveness, or consumer perception") of Defendant's promotional emails, the RFP is not appropriate at this stage for the reasons described in the preceding paragraph.  As

ORDER - 14

to the information about legal or compliance information ("legality, or risks of urgency-based or scarcity based marketing practices"), the Court does not see, nor do Plaintiffs explain, how such information goes to Rule 23 or a class allegation. What matters is whether the emails that Defendant sent went to Washington residents and whether they, in fact, contained misleading or false information. Defendant's knowledge about its marketing practices' legality does not appear necessarily relevant to this analysis. Thus, the Court will not compel production of documents in response to this RFP.

RFP No. 18 seeks "[a]ll documents reflecting Your knowledge of whether subject lines accurately reflected the true duration or availability of promotions." *Id.* at 26. This RFP seeks documents that could shed light on whether the email subject lines accurately conveyed the length or duration of promotions, which goes to whether those subject lines contained false or misleading information. Further, this request bears on what Defendant knew about the emails that it sent, which goes towards the knowledge requirement of CEMA. Thus, the Court compels production of documents in response to this RFP.

RFP No. 19 seeks "[a]ll documents relating to Plaintiffs, including but not limited to Your communications with Plaintiffs." *Id.* at 27. This request relates to the named Plaintiff's allegations. If Defendant withheld any such documents, the Court would compel their production. But it does not appear from Defendant's response to this RFP that it intended to withhold any responsive documents, nor do Plaintiffs say that Defendant has so withheld.

RFP No. 20 seeks "[a]ll documents identifying or referencing members of the putative Class." *Id.* at 28. To the extent that this request seeks documents identifying email recipients who live in Washington, the request is duplicative of RFP No. 8. The Court is already compelling production in response to RFP No. 8. Nor would identifications or references to putative class members go to Rule 23 issues beyond identifying potential class members, which

ORDER - 15

Defendant is already obliged to do by RFP No. 8.  Thus, the Court will not compel production of documents in response to this RFP.

RFP No. 21 seeks "[a]ll documents corresponding to or evidencing the emails identified in the Complaint and accompanying exhibits." *Id.* at 29.  Defendant issued boilerplate privilege, vagueness, and overbreadth objections, as well as the class objection, but did say that it would "produce the emails identified in the Complaint[.]" *Id.*  Assuming Defendant will also produce emails identified in Exhibit A as well as the body of the complaint itself, the Court does not see what remains for Defendant to produce in response to this RFP, and Plaintiffs do not otherwise explain in their briefing what remains deficient about Defendant's response to this RFP.  Thus, the Court will not compel production of documents in response to this RFP.

RFP No. 22 seeks "[a]ll documents relating to any internal or external investigation concerning deceptive marketing emails or subject lines."  Dkt. # 42-6 at 29.  The documents sought by this request do not appear to go towards any class allegations or Rule 23 element.  Nor do Plaintiffs make any specific arguments as to why Defendant should be compelled to produce a response to this RFP.  *See Hancock*, 321 F.R.D. at 390 ("The moving party bears the burden of demonstrating that . . . the responding party's objections lack merit.").  Accordingly, the Court will not order production in response to this request.

The Court considers RFP Nos. 23 and 24 together.  RFP No. 23 seeks "[a]ll documents relating to consumer complaints, regulatory inquiries, or enforcement actions concerning email marketing or deceptive practices." *Id.* at 30.  RFP No. 24 seeks "[a]ll documents referenced or relied upon in Your response to any Requests, Requests for Admission, or defenses in this action." *Id.* at 31.  In response to RFP No. 23, Defendant stated that "no such documents exist." *Id.* at 31.  In response to RFP No. 24, Defendant stated that it understood "requests" to mean the discovery requests served in conjunction with the RFP, which would include the interrogatories

ORDER - 16

and that it would produce documents that it relied on to answer those requests (in addition to Plaintiffs' RFAs). This appears to comply with the RFP. And because Plaintiffs do not otherwise take issue with Defendant's responses, the Court will not order any document production in response to these requests.

*Application to Disputed RFAs*. Plaintiffs make a conclusory argument that Defendant's RFA responses make "boilerplate objections, improper website-only limitations, premature class-discovery objections, refusal to provide discovery now covered by the protective order, and evasive responses that obscure what Macy's is withholding." Dkt. # 41 at 16. In their briefing, they point to no specific responses to RFAs that are deficient, unlike with their Interrogatories. Each RFA is, in fact, either denied or admitted. *See generally* Dkt. # 42-7. Defendant did not refuse to respond to any particular RFA. Many of the RFAs (out of 29, Nos. 6 through 18, as well as Nos. 22 and 23) ask Defendant to admit that its marketing emails were essentially lies or misleading, which Defendant contests and thus denied. *See* Dkt. # 42-7 at 8–12.

Plaintiffs say that they identified, to Defendant, the RFAs to which it found Defendant's objections unsatisfactory. *See* Dkt. # 49 at 7 (citing Dkt. # 42-10 (email correspondence between Plaintiffs' counsel and Defendant's counsel)). But at no point in their briefing do they identify for the *Court* which of RFAs remain disputed. Plaintiffs' burden here is to "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why . . . the responding party's objections are not meritorious." *See Hancock*, 321 F.R.D. at 390; *see also Rockemore v. Aguirre*, 2022 WL 18397379, at *1 (C.D. Cal. July 1, 2022) ("As part of this burden, the moving party must identify each disputed discovery request, the response to each request, and an argument why the response is deficient," denying motion to compel). Plaintiffs have not done so with respect to the RFAs. *See Taber v. Cascade Designs, Inc.*, 2023 WL 3075765, at *7 (W.D. Wash. Apr. 25, 2023) (noting that the plaintiff "fails to

ORDER - 17

specify any specific RFA that was not answered or any legally deficient response or objection" and declining to grant discovery relief concerning RFAs "because all requests were either admitted or denied," as here); *Garcia v. Chandra*, 2024 WL 4873594, at *5 (E.D. Cal. Nov. 22, 2024) (declining to grant discovery relief because the plaintiff "fails to specify any specific RFA that was not answered and does not challenge any response or objection to an RFA as legally deficient."). Accordingly, the Court will decline to compel Defendant to produce supplemental responses to Plaintiffs' RFAs.

        2.      Interrogatory No. 13

Interrogatory No. 13 asks Defendant to "[d]escribe any corrective measures that You took after receiving the Complaint with respect to marketing emails." Dkt. # 42-5 at 23. In response, Defendant stated that it "denies the allegations in the Complaint and denies that any 'corrective measures' were required." Dkt. # 42-5 at 24. Defendant also stated that, "[t]o the extent this Interrogatory asks Defendant to identify or describe any actions taken after receipt of the Complaint, Defendant objects because any such information necessarily reflects privileged communications, attorney work product, and/or internal deliberations undertaken in anticipation of litigation and at the direction of counsel." *Id.*

Plaintiffs contend that the request is proper because it seeks the underlying facts of what Defendant did in response to the complaint and not any attorney work product or attorney-client communications. *See* Dkt. # 41 at 13 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)). Plaintiffs say they seek "factual information" such as whether Defendant "changed subject-line practices" or "other marketing email practices after receiving the Complaint." *Id.* at 13. Defendant responds that it undertook no "corrective measures" in the sense that it did nothing that was "corrective" and that the remainder of Interrogatory No. 13 "implicates legal analysis" encompassing any "measures" Defendant took after receiving the complaint. Dkt. # 43

at 8.  On reply, Plaintiffs say that Defendant's position is inconsistent and that it must either assert that it "made no nonprivileged changes to its marketing-email practices after receiving the Complaint" or else disclose "the nonprivileged facts of any such changes."  Dkt. # 49 at 6.

Interrogatory No. 13 simply asks for "corrective measures."  Dkt. # 42-5 at 23. Defendant denied that it took corrective measures.  Plaintiffs' briefing (and Defendant's, to be fair) espouses a much broader view of the Interrogatory than what is written.  The Interrogatory does not ask for the general facts of what Defendant did after receiving the complaint  The Court sees nothing to compel, since Defendant answered.  *See Fahey v. Wally's Las Vegas, LLC*, 2026 WL 125078, at *2–3 (D. Nev. Jan. 15, 2026) ("[t[o] the extent [the p]laintiff seeks to compel the production of information that was not initially requested, the Court will not compel such production.").  Moreover, nothing prevents Plaintiffs' counsel from serving another interrogatory on Defendant asking if it made any changes to its email marketing system.

3.      Rule 34 Inspection

Last, Plaintiffs seek an order compelling Defendant to permit an inspection, via Zoom or other remote screenshare, of its electronic email marketing systems under Rule 34.  Rule 34 permits that a requesting party "inspect . . . any designated documents or electronically stored information," including "data or data compilations."  Fed. R. Civ. P. 34(a)(1)(A).

Defendant says that the parties agreed to conduct another meet and confer regarding the Rule 34 inspection after Plaintiffs reviewed Defendant's supplemental interrogatory responses. *See* Dkt. # 44 ¶ 8.  But Plaintiffs moved to compel before receiving those supplemental responses, which Defendant says demonstrates their failure to fulfill their discovery obligations. Dkt. # 43 at 9.  Plaintiffs do not respond to this charge on reply.  In any event, because the Court agrees that the requested Rule 34 inspection is, at this stage, excessively burdensome, it will not rule on whether Plaintiffs complied with their discovery obligations with respect to this request.

ORDER - 19

Plaintiffs contend that it must be permitted to inspect Defendant's systems because those systems are relevant to both merits and class certification, the discovery is not duplicative, the inspection would not create new evidence or data, and because a protective order is in force. Dkt. # 41 at 14–15.  Defendant responds that such an inspection is unnecessary, disproportionate, and burdensome, in addition to duplicating information that Defendant has provided in its other discovery responses.  *See* Dkt. # 43 at 9–11.

The Court agrees with Defendant.  First, this order already compels Defendant to produce much information (particularly with respect to Rule 23 issues) sought by the inspection, such RFP Nos. 1, 5, 6, and 8.  But moreover, the specifics of how Defendant manages its email marketing systems does not appear to be relevant at the class precertification stage.  To reiterate, liability under CEMA requires showing that the defendant sent emails with false or misleading subject lines.  The Court does not see how a screenshared inspection of Defendant's marketing systems would uncover additional information towards CEMA liability beyond what Defendant must already provide.  And Plaintiffs fail to explain what such an inspection would uncover that is not already provided by the RFPs, interrogatories, and RFAs.  Further, the discovery rules permit parties to "produce copies of documents or of electronically stored information instead of permitting inspection."  Fed. R. Civ. P. 34(b)(2)(B).  Based on the record before it, the Court believes that permitting "[w]holesale access" to Defendant's email marketing systems "would be grossly disproportionate to the needs of the case."  *S/Y Paliador, LLC v. Platypus Marine, Inc.*, 344 F.R.D. 110, 120 (W.D. Wash. 2023) (citing *Philips N. Am. LLC v. Advanced Imaging Servs.*, 2023 WL 316916, at *2 (E.D. Cal. Jan. 19, 2023)).

    4.      Fees

Finally, in the final sentence of their motion, Plaintiffs request fees under Rule 37(a)(5). *See* Dkt. # 41 at 16.  Plaintiffs make no argument for fees beyond a bare assertion of entitlement.

ORDER - 20

Defendant also requests fees in its opposition and makes a substantive argument. *See* Dkt. # 43 at 11–12. On reply, Plaintiffs deny that fees against them are warranted and that, "at minimum, [] each side bear its own fees if relief is granted in part and denied in part." Dkt. # 49 at 8. Since this order does so, and because the Court does not otherwise see that the Rule 37(a)(5) requirements are met, the Court exercises its discretion to award no fees to either side.

## IV

### CONCLUSION

For the reasons above, the Court GRANTS in part Plaintiffs' motion and ORDERS Defendant to serve supplemental responses to the following RFPs:

- RFP No. 1
- RFP No. 5
- RFP No. 6
- RFP No. 8
- RFP No. 18
- RFP No. 19, if any such documents remain outstanding

The Court DENIES the remainder of Plaintiffs' motion.

Dated this 23rd day of July, 2026.

John H. Chun
United States District Judge

ORDER - 21