The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| STEPHANIE AGNEW, FELISA BRYANT, DEBORAH CERKEZOGLU, AZA ZHAMBEKOVA, and SHAWNA STUMP, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MACY'S RETAIL HOLDINGS, LLC,<br><br>Defendant. | Case No. 2:25-cv-02006-JHC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

# TABLE OF CONTENTS


TABLE OF CONTENTS ....... ii

TABLE OF AUTHORITIES ....... iii

FACTUAL BACKGROUND ....... 1

STANDARD OF REVIEW ....... 2

ARGUMENT ....... 3

I. Defendant's Proposed "Harmonization" of the Law Instead Corrupts It. ....... 3

i. *Wright* Establishes That a CEMA Violation *Per Se* Satisfies All Five CPA Elements, Including Injury. ....... 7

ii. *Montes* Does Not Disturb *Wright*'s *Per Se* Rule. ....... 11

iii. Article II, Section 37 Does Not Apply. ....... 14

II. Certification is Inappropriate. ....... 16

CONCLUSION ....... 18

WORD COUNT CERTIFICATE ....... 19

CERTIFICATE OF SERVICE ....... 19




**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnew v. Macy's Retail Holdings, LLC*,
No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026)....1

*Brown v. Old Navy, LLC*,
4 Wash. 3d 580 (2025)....4, 11, 15

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025).... *passim*

*Cabrera v. City of Huntington Park*,
159 F.3d 374 (9th Cir. 1998)....12

*Cantwell v. Univ. of Mass.*,
551 F.2d 879 (1st Cir. 1977)....17

*City of Houston, Tex. v. Hill*,
482 U.S. 451 (1987)....17

*Cultura v. Timex Group USA, Inc.*,
No. 2:26-cv-00445 (W.D. Wash.)....5, 6

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938)....1, 12

*Garbaccio v. Starbucks Corp.*,
2026 WL 2035799 (W.D. Wash. July 15, 2026)....3

*Gildiner v. Thomas Jefferson Univ. Hosp.*,
451 F. Supp. 692 (E.D. Pa. 1978)....3

*Happy Inv. Grp. v. Lakeworld Props., Inc.*,
396 F. Supp. 175 (N.D. Cal. 1975)....6

*Harry v. Kent Elastomer Prods., Inc.*,
538 F. Supp. 3d 776 (N.D. Ohio 2021)....3

*Jefferson v. Lead Indus. Ass'n, Inc.*,
106 F.3d 1245 (5th Cir. 1997)....1

*Johnson v. Carpenters of W. Wash. Bd. of Trs.*,
824 F. Supp. 3d 1103 (W.D. Wash. 2026)....2



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) ..... 14

*Montes v. SPARC Group LLC*,
586 P.3d 999 (Wash. 2026) ..... *passim*

*Nat'l Bank of Wash. v. Pearson*,
863 F.2d 322 (4th Cir. 1988) ("If Pearson had wanted the Maryland Court of Appeals to rule on the matter, he should not have removed the action to federal court.") ..... 17

*Oregon Aero Inc. v. Navigators Ins. Co.*,
No. 3:21-CV-01178-AN, 2025 WL 3254653 (D. Or. Nov. 21, 2025) ..... 17

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989) ..... 13

*Sarnoff v. Am. Home Prods. Corp.*,
798 F.2d 1075 (7th Cir. 1986) (Posner, J.) ..... 16

*State v. Hall*,
95 Wn.2d 536 (Wash. 1981) ..... 14

*State v. Heckel*,
143 Wash. 2d 824 (2001) ..... *passim*

*Tarr v. Manchester Ins. Corp.*,
544 F.2d 14 (1st Cir. 1976) ..... 17

*Thompson v. Paul*,
547 F.3d 1055 (9th Cir. 2008) ..... 17

*Turnstall v. Bergeson*,
141 Wn.2d 201 (Wash. 2000) ..... 14

*TVI Inc. v. Ferguson*,
2018 WL 1610220 (W.D. Wash. Apr. 3, 2018), *clarified on reconsideration,* 2018 WL 1933711 (W.D. Wash. Apr. 24, 2018) ..... 6

*Wright v. Lyft, Inc.*,
189 Wash. 2d 718 (2017) ..... *passim*

*Wright v. Lyft, Inc.*,
189 Wn.2d 718, 406 P.3d 1149 (2017) ..... *passim*



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

**Statutes**

Consumer Protection Act ........................................................................................... *passim*

RCW § 19.190 ....................................................................................6, 7, 8, 9, 15, 16

Washington's Automatic Dialing Act..........................................................................14

**Other Authorities**

17A Fed. Prac. & Proc. Juris. § 4248 (3d ed.) ..............................................................17

Fed. R. Civ. P. 12 ..............................................................................................2, 3, 11

Washington Constitution Article II, Section 37.........................................................14, 15



STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Plaintiffs Stephanie Agnew, Felisa Bryant, Deborah Cerkexoglu, Aza Zhambekova, and Shawna Stump respond in opposition to Defendant Macy's Retail Holdings, LLC's ("Macy's") Motion for Judgment on the Pleadings. D.E. 56. This is a case under Washington's CEMA statute that is past the motion to dismiss stage and into discovery. *See generally Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025).

Defendant is desperate to escape this case in any way that it can. It moved to dismiss and to stay discovery and lost. D.E. 30; *see also Agnew v. Macy's Retail Holdings, LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026). The arguments Macy's has thrown at the wall so far include preemption and the Dormant Commerce Clause. Next in Santa's grab bag of defenses is the New Revelation of the Word of *Montes*. Essentially, Macy's says, this Court should put the cart before the horse and decide damages in this case now, even though liability has not been established. Then, Macy's says, this Court should invade the bailiwick of the State's legislature to rewrite the law of Washington to establish a different way to analyze damages under CEMA. Third and finally, Macy's says, if this Court is not willing to wade into *Erie*'s murky waters and rewrite state law, it should certify those questions to the Washington Supreme Court.[1] The Motion should be denied.

## FACTUAL BACKGROUND

[1] Consider how extraordinary this request is. Macy's brought this case here from state court by the removal statutes. D.E. 1. Then, it moved to dismiss and stay discovery. Now, if this Court does not give it the answer it wants, then Macy's seeks transfer *back to state court* so that *those* courts may give it the answer it wants. This sequence bespeaks a party that is simply trying to evade liability and find whatever forum best suits its present litigation position. This is akin to a child going to Dad when Mom has already said no. That is not how litigation works, even if it is how parenting works. This Court should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997).



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Plaintiffs filed this case in state court on September 10, 2025, nearly one year ago. D.E. 1-1 at 2. Defendant filed a motion to dismiss and lost. D.E. 30. Macy's answered the complaint on April 1, 2026. D.E. 31. The parties are currently engaged in discovery and are actively litigating the case. *E.g.*, D.E. 55 (discovery dispute order). Macy's opens its motion by invoking the grizzled lawyer's best adage: "When the law is on your side, pound on the law. When the facts are on your side, pound on the facts. When you have neither, try to disparage opposing counsel." *E.g.*, D.E. 56 at 1 ("Plaintiffs' counsel here have filed over 100 such class actions, including over 40 in just the last two months."). Plaintiffs did not write CEMA. Plaintiffs' counsel did not write CEMA. This Court did not write CEMA. All Macy's offers here is a wholesale revision of the law to justify its renewed request for relief from its own deceptions. Macy's also boldly suggests that this lawsuit is based on "subject lines that nobody ever read." D.E. 56 at 1. If Macy's truly believes that no consumers are reading its emails, then the company should save itself the trouble and cease sending them. But the company sent them because they work. D.E. 1-1 at ¶ 35 (deceptive email strategies are psychologically effective).

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter of law." *Johnson v. Carpenters of W. Wash. Bd. of Trs.*, 824 F. Supp. 3d 1103, 1107 (W.D. Wash. 2026) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (quotation marks omitted)). Because it is "functionally identical to a motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion." *Id.* (quoting *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (quotation marks omitted)). On a Rule 12(c) motion, "courts may consider the



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

pleadings, documents attached to the pleadings, documents incorporated therein, or matters of judicial notice." *Id.* (citations omitted). And as with Rule 12(b)(6) motions, the Court "must accept the non-moving party's well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party." *Id.* (citing, *e.g.*, *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019)).

A motion for judgment on the pleadings is "properly granted when, after the pleadings are closed and accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Garbaccio v. Starbucks Corp.*, 2026 WL 2035799, at *3 (W.D. Wash. July 15, 2026) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks omitted)).

Generally, of course, liability comes before damages. 9A Charles Alan Wright & Arthur R. Miller *et al.*, Fed. Prac. & Proc. Civ. § 2390 (3d ed.) ("Logically, the existence of liability must be resolved before damages are considered."). Complaints are not subject to dismissal merely because they outline what the damages might be. *See generally Harry v. Kent Elastomer Prods., Inc.*, 538 F. Supp. 3d 776, 784 (N.D. Ohio 2021); *Gildiner v. Thomas Jefferson Univ. Hosp.*, 451 F. Supp. 692, 696 (E.D. Pa. 1978) ("Because at least some damages are cognizable at law, the motion for judgment on the pleadings may not be granted for lack of damages.").

## ARGUMENT

It is a cardinal rule of the legal system that damages are decided after liability. Macy's theory under *Montes* is nothing more than an attempted sleight of hand. Defendant focuses entirely on a flashy new case, hoping no one will notice that the case never even touches the actual statute driving this lawsuit. Unfortunately for Macy's, its illusion fails because even the most skilled magician cannot vanish a legal claim using a spell that speaks an entirely different language

### I. Defendant's Proposed "Harmonization" of the Law Instead Corrupts It.



STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Macy's Motion argues that Plaintiff has not alleged a cognizable CPA injury in light of *Montes v. SPARC Group LLC*, 586 P.3d 999 (Wash. 2026). That assertion is wrong. The ground is settled on Plaintiffs' claims for relief: a well-pled CEMA violation constitutes a per se claim under the CPA for statutory damages. D.E. 1-1 at ¶¶ 104–110 (CEMA claim for injunctive relief); ¶¶ 111–120 (CEMA violation is *per se* CPA violation for damages). This is the construction required by three key cases from the Washington Supreme Court: *Wright*, *Heckel* and *Brown*.

Defendant's argument rests on the untenable and bizarre premise that *Montes* silently overruled *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 406 P.3d 1149 (2017), and fundamentally altered the framework governing CPA claims predicated on CEMA violations. It did neither. *Montes* is not a CEMA case. Defendant's attempt to reconcile these cases by effectively limiting *Wright* to its precise facts and ignoring its holding is unsupported by either decision. It also defies common sense. Would the Washington Supreme Court have overruled itself without saying so? That would be a rare event.

The Washington Supreme Court has issued multiple decisions interpreting CEMA and the CPA. As this case concerns the interaction of those two statutes, the question is whether Washington courts *really* meant what they said in making decisions about the State's laws. The clear answer: yes. Macy's interpretations simply favor its litigation position and have no basis in the actual language that Washington courts used when addressing questions of Washington law. *Brown* articulates how CEMA claims work. *Wright* teaches how CEMA and the CPA interact. *Montes* instructs on how to apply the CPA *without* an accompanying CEMA claim.

| **Case** | **Context** | **Rule** | **Why it Matters** |
|---|---|---|---|
| *Wright v. Lyft, Inc.*, 189 Wash. 2d 718 (2017) | CEMA/CPA claim based on promotional text message | A CEMA violation may support a CPA claim. | *Wright* is the central Washington Supreme Court authority on CEMA-based CPA injury. |



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

| | | | |
|---|---|---|---|
| *Brown v. Old Navy, LLC*, 4 Wash. 3d 580 (2025) | CEMA claim based on misleading promotional email subject lines | CEMA prohibits false or misleading information in commercial subject lines, not only information disguising the commercial nature of the email. | *Brown* confirms that false or misleading promotional subject lines are actionable under CEMA. |
| *Montes v. SPARC Group, LLC*, 586 P.3d 999 (2026) | Standalone CPA claim based on false reference pricing where Plaintiff bought and kept the advertised product at the advertised price | A consumer does not suffer CPA injury merely by buying and keeping a fungible product at the advertised price based on alleged misrepresentations about price history. | *Montes* did not involve CEMA or receipt of prohibited commercial messages. It did not cite or displace *Wright* or *Brown*. |

It's that simple. State supreme courts do not generally rewrite their own recent holdings while remaining silent as to their intent. Yet, that is the strained interpretation proffered by Macy's here; accepting it would require this Court to enact new law where the state's high court has already ruled on the questions of state law that Defendant pretends are unanswered. In *Wright*, the court explicitly stated, and re-stated, that as a *per se* violation of the CPA, "damages for CEMA violations are *automatic*." 189 Wash. 2d at 729 (emphasis added).

*Montes* is a case regarding a standalone CPA claim and discusses the standard governing standalone CPA claims. **There is no CEMA claim in *Montes***. Despite Macy's best efforts, it cannot overcome the fact that *Montes* never once mentions (1) CEMA, (2) "per se" violations of the CPA *or* (3) any of the three key decision construing these two statutes together. *Montes* simply cannot be read as Macy's motion demands. As the Washington Attorney General, the State's enforcer of CEMA and the CPA, recently made clear, as an intervenor in *Cultura v. Timex Group USA, Inc.,* No. 2:26-cv-00445 (W.D. Wash.):

> CEMA's plain language is neither confusing nor tacit in its relationship to the CPA. The Legislature clearly stated that <u>for CEMA violations</u>, each violation entitles plaintiffs to $500 per email "<u>or</u> actual damages." Wash. Rev. Code § 19.190.040 (emphasis added) thus expressly gave consumers harmed by deceptive emails two options—either obtain

> statutory damages or prove actual damages if they exceed the statutory floor. This is not an implied amendment to the whole CPA, nor a repeal or obfuscation of the CPA's clear statutory requirements in cases not involving CEMA. CEMA instead represents a straightforward legislative determination that CEMA violations, which are per se violations of the CPA, entitle plaintiffs to statutory damages.

*Id.* at Dkt. 39, attached hereto as Exhibit A (emphasis original).[2]

This is not a meritorious challenge. While Macy's may ignore the plain text and import of the statutory text and the decisions in *Wright*, *Heckel*, and *Brown*, this Court cannot. And from a 40,000 foot view, this is a pure question of state law about how two state statutes (CEMA and the CPA) interact. Which decision is more on point? The one with a CEMA claim (*Wright*), or the one without (*Montes*)? It is not this Court's duty or task to rewrite decades Washington Supreme Court jurisprudence concerning how CEMA and the CPA work together. But that is the position that Defendant here is taking: that a new Washington Supreme Court case is CEMA's silver bullet despite never mentioning the statute.

The statutory language and governing case law is clear: by pleading a CEMA violation, Plaintiffs have correspondingly pled a *per se* violation of the CPA, including causation and injury. *See* RCW § 19.190.030(1)(b) (CEMA violation is "a violation of the consumer protection act, chapter 19.86 RCW"). The Supreme Court of Washington, sitting en banc, answered the very question Defendant pretends is yet unanswered in *Wright*: whether CEMA's damages provision "establishes the causation and/or injury elements of a CPA claim as a matter of law." 189 Wash. 2d at 728.

---

[2] The *Cultura* docket and the Attorney General's Brief are properly subject to judicial notice. *See, e.g.*, *TVI Inc. v. Ferguson*, 2018 WL 1610220, at *2 (W.D. Wash. Apr. 3, 2018), *clarified on reconsideration,* 2018 WL 1933711 (W.D. Wash. Apr. 24, 2018), *corrected,* 2018 WL 2010568 (W.D. Wash. Apr. 30, 2018) ("A court may take judicial notice of undisputed matters of public record, including documents 'on file in federal or state courts.'" (quoting *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012)); *Happy Inv. Grp. v. Lakeworld Props., Inc.*, 396 F. Supp. 175, 183 n.6 (N.D. Cal. 1975) (finding brief by attorney general was susceptible to judicial notice as matter of public record).



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

This definitive answer is directly contrary to what Defendant proffers: "the provision does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*." *Id.* at 729 (emphasis original) *See, e.g.*, *Heckel*, 143 Wash. 2d at 828 ("RCW 19.190.030 makes a violation of the Act a per se violation of the Consumer Protection Act (CPA), chapter 19.86 RCW."); *Harbers*, 415 F. Supp. 3d at 1002–03 ("[B]y alleging a CEMA violation . . . a plaintiff alleges all five elements of a CPA violation[.]"). The court recently reinforced this clear holding in *Brown*: "A violation of CEMA's e-mail regulations is a per se violation of the [CPA]. . . . Unlike the CPA, CEMA's $500 penalty *does not require a showing of actual damages*. *Under CEMA, the injury is receiving an e-mail that violates its regulations*." 4 Wash. 3d at 584 (emphasis added). Thus, there is no question as to whether Plaintiffs must plead economic loss on their *per se* CPA claim for damages, because the question has been authoritatively answered.

**i. *Wright* Establishes That a CEMA Violation *Per Se* Satisfies All Five CPA Elements, Including Injury.**

Macy's injury argument rests on a flawed premise: that even where a CEMA violation constitutes a *per se* CPA violation, a plaintiff must independently allege and prove injury to business or property and causation separate from the statutory violation itself. D.E. 56 at 6. That is not the law. The statutory language and governing case law speak in unison: by pleading a CEMA violation, Plaintiffs have correspondingly pled a per se violation of the CPA, including causation and injury. *See* RCW § 19.190.030(1)(b) (CEMA violation is "a violation of the consumer protection act, chapter 19.86 RCW"). Macy's assertions are particularly confounding in the context of the *Wright* decision. On the certified question, "[d]oes the liquidated damages provision of CEMA, RCW 19.190.040(1), establish the causation and/or injury elements of a claim under the Washington Consumer Protection Act [ ] *as a matter of law*," the court answered: "Yes." 189 Wash. 2d at 722-23 (emphasis added). It



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

answered "yes" *twice*. *Id.* at 732. Nor did the court stop there. The *Wright* court added that RCW 19.190.040 "does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*." *Id.* at 729, 732 (emphasis original). Despite this definitive answer, Macy's attempts to limit *Wright* to CEMA's text-message provisions, misreading both *Wright* and CEMA itself.

*Wright* is black-letter CEMA law. Macy's knows that decision is dispositive, because its Motion includes not just one but two headings preceding pages of analysis trying to establish why *Wright* does not apply here. *E.g.*, D.E. 56 at 6 ("*Wright v. Lyft* does not salvage Plaintiffs' claims[.]"); D.E. 56 at 12 ("*Wright v. Lyft* does not compel a different result[.]"). That is telling.

In *Wright*, the court held that a plaintiff who establishes a CEMA violation has also established the elements of a CPA claim, including injury. 189 Wash. 2d at 729 (emphasis original) ("[I]t is nonsensical for the legislature to write a damages provision free of preconditions, only for this court to read in elements that lawmakers did not include."). That should be the end of the inquiry—especially when supported by further decisions from the state's high court that CEMA violations are per se violations of the CPA. *See, e.g.*, *Heckel*, 143 Wash. 2d at 828 ("RCW 19.190.030 makes a violation of the Act a per se violation of the Consumer Protection Act (CPA), chapter 19.86 RCW."); *Brown*, 4 Wash. 3d at 584 ("A violation of CEMA's e-mail regulations is a per se violation of the [CPA] . . . Unlike the CPA, CEMA's $500 penalty *does not require a showing of actual damages*. *Under CEMA, the injury is receiving an e-mail that violates its regulations*." (emphasis added)). *See also Harbers*, 415 F. Supp. 3d at 1008 ("[B]y alleging a CEMA violation . . . a plaintiff alleges all five elements of a CPA violation[.]").

*Wright*'s reasoning is grounded in CEMA's chapter-wide legislative findings: "the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

consumer protection act" and a violation "is an unfair or deceptive act in trade or commerce … for the purpose of applying the consumer protection act." RCW 19.190.030(3). This declaration applies to all practices that CEMA prohibits—not only text message violations—and doesn't except misleading email subject lines from those practices. And how could it? It applies to the whole statute. As the court explicitly stated in *Wright*, this statutory language reflects the Washington Legislature's intent to make all practices precluded by CEMA—including sending "spam email"—a *per se v*iolation of the CPA. *Wright*, 189 Wash. 2d at 730 ("[T]he legislature made sending spam e-mail a per se violation of the CPA." (citing RCW 19.190.030)).

Macy's proceeds as though *Wright* rests solely on the fact that unsolicited text messages may occupy device memory, interrupt desired communications, or consume data. D.E. 56 at 7. But *Wright* did not hold that CPA injury exists only when prohibited communication impose those specific costs. The court's discussion of data costs, memory use, and interruption of desired communications merely echoed the Legislature's determination that CEMA violations are actionable under the CPA as a matter of law. *Wright*, 189 Wash. 2d at 730-31 ("Taken together, RCW 19.190.040's automatic damages language, the legislative intent to limit the practice of sending unsolicited commercial text messages, and the legislative intent to treat text messages in the same manner as spam e-mail weigh against requiring a CEMA plaintiff to independently prove injury and causation."). It did not establish a test limiting *Wright*'s reasoning to violations possessing those precise characteristics.

Macy's attempt to confine *Wright*'s analysis to text messages finds no support in the statute, the opinion, or common sense. *See, e.g.*, *Wright*, 189 Wash. 2d at 730 ("Functionally, however, there is no indication in RCW 19.190.060 and .030(1) that the legislature intended to regulate text messages and e-mails differently."). The harms identified in *Wright* are certainly not unique to deceptive text messages. Commercial emails containing false or misleading subject lines *also* occupy space in



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

consumers' inboxes (not unlike a phone), require recipients to spend time and effort processing, organizing, reviewing or deleting them (much like unwanted texts), and interferes with recipients' ability to identify and prioritize desired communications (same for a phone or a computer). Even when a consumer chooses to receive promotional emails from retailers, they do not consent to receive false or misleading commercial communications prohibited by CEMA. The Legislature's determination that practices prohibited by CEMA inflict CPA-actionable injuries as a matter of law reflects the common sense understanding that deceptive electronic *communications* impose real burdens on consumers' money and property, regardless of whether those communications arrive by text message or email. The Washington legislature was entitled to make this determination and regulate deceptive electronic communications.

Defendant incorrectly assumes that emails containing false or misleading subject lines impose the same burdens on consumers as emails conveying truthful information. They do not. Deceptive subject lines are designed to induce recipients to devote attention to communications they otherwise may ignore, causing consumers to expend additional time and effort reviewing, processing, prioritizing, and managing emails that violate CEMA. Said another way, Macy's argument forgets that CEMA targets *deception*. A truthful subject line allows recipients to make informed decisions about whether and when to engage with a commercial email. A false or misleading subject line deprives consumers of that choice by inducing them to devote time and attention to communications through deceptive means. Consumers may consent to receive promotional emails, but they do not consent to receive promotional emails containing false or misleading subject lines designed to manipulate how they allocate their time and efforts.

If the Washington Supreme Court meant to restrict its holding to CEMA's text-message provisions alone, it would have done so. Macy's interpretation would require this Court to add a



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

limitation to *Wright* that the Washington Supreme Court itself never imposed. Because Plaintiffs adequately alleged violations of CEMA's prohibition against false or misleading email subject lines, *Wright* compels the conclusion that Plaintiffs have sufficiently alleged injury for purposes of the CPA. *See id.*, 189 Wash. 2d at 728.

**ii. *Montes* Does Not Disturb *Wright*'s *Per Se* Rule.**

Macy's contends that *Montes*—a decision plainly addressing claims under the CPA, not CEMA—requires Plaintiff to independently demonstrate objective economic loss regardless of *Wright*. That argument misreads *Montes* and effectively asks this Court to find that the Washington Supreme Court sub silentio overruled *Wright*—a conclusion wholly unsupported by *Montes*. *Montes* does not even cite *Wright* or *Brown*—making it difficult to maintain that a state supreme court overruled two of its own decisions without mentioning them.

*Montes* considered a standalone CPA claim premised on the misrepresentation of a product's price history. *Montes v*, 586 P.3d at 1002. *Montes* did not construe (or even mention) CEMA. It did not involve a per se statutory violation. It did not cite, discuss, limit, or overrule *Wright*. It also didn't mention *State v. Heckel*, 143 Wash. 2d 824 (2001) or *Brown v. Old Navy, LLC*, 4 Wash. 3d 580 (2025)—all controlling authority on CEMA—because *Montes* has nothing to do with CEMA. Macy's focus on *Montes*, therefore, is irrelevant to the Court's analysis on this Rule 12 challenge to Plaintiffs' CEMA claims, and their derivative CPA claims. This fundamental misunderstanding weaves through Macy's reasoning, leading it to devote much of its brief to an imaginary correlation between *Montes* and *Wright*.

*Montes* simply applied established law to the plaintiff's legal theory. The Washington Supreme Court is presumed to say what it means. If the *Montes* court wanted to limit *Wright*'s *per se* rule and alter the framework governing CEMA-based CPA claims as established by *Wright* nearly a



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

decade prior, it would have said so. This Court should reject Defendant's invitation to read into *Montes* a limitation on *Wright* that the Washington Supreme Court itself declined to impose.

Moreover, the cases are fundamentally different. In *Montes*, the plaintiff purchased leggings at an advertised discount and received exactly what she paid for – the leggings at the advertised price. *Montes*, 586 P.3d at 1002. The court held that "disappointed expectations" about a product's price history, without more, do not constitute injury to business or property under the CPA. *Id*. at 1001-02. Here, Plaintiffs do not allege that Macy's misrepresented the value of a transaction that Plaintiff voluntarily entered into. Nor do Plaintiffs allege injuries based solely on disappointment arising from a completed purchase.

Plaintiffs are not bringing a standalone CPA claim. Rather, Plaintiffs pled their claim under CEMA as a *per se* violation of the CPA, which establishes all the elements necessary to bring a private action under the CPA. *See, e.g.*, *Wright*, 189 Wash. 2d at 730 ("[T]he legislature made sending spam e-mail a per se violation of the CPA."); *Brown*, 4 Wash. 3d at 584 ("A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)[.]"); *Heckel*, 143 Wash. 2d at 828 (same); *Harbers*, 415 F. Supp. 3d at 1008 ("[B]y alleging a CEMA violation . . . a plaintiff alleges all five elements of a CPA violation[.]"). And Plaintiffs' pleadings turn on assertions that Macy's is liable under CEMA—and *therefore*, the CPA—for transmitting emails containing false or misleading subject lines about the availability of its sales and promotions. Those allegations implicate the distinct statutory framework addressed in *Wright*, not the pricing history representations at issue in *Montes*.

Finally, the Court cannot take the step which Macy's urges. *Erie* does not license federal courts to overrule state courts of last resort on matters of state law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal courts apply state law as it is, not as it might be. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 378 (9th Cir. 1998) (quoting *Klingebiel v. Lockheed Aircraft Corp.*,



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

494 F.2d 345, 346 (9th Cir. 1974)) ("[T]his Court's duty is 'to ascertain and apply the existing California law, not to predict that California may change its law and then to apply our notion of what that change might or ought to be." (original brackets omitted)); *cf. Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (lower federal courts may not declare directly applicable Supreme Court precedent implicitly or effectively overruled.). And existing, directly applicable Washington law is *Wright*.

Defendant's purported harmonization of *Wright* and *Montes*—under which *Wright* is confined to text messages and *Montes*, which doesn't even mention CEMA, governs everything else—is a novel legal construction that no Washington high court has adopted and would require overruling controlling Washington State law. This Court should decline to be the first to overrule prior CEMA precedent. Because *Montes* neither addressed nor altered the framework governing CEMA-based CPA claims, Macy's reliance on *Montes* provides no basis for issuing final judgment on the well-pled Complaint.

It is also telling that Macy's position has shifted so markedly. When Macy's filed its motion to dismiss, it said:

> And unlike a tort claim for fraud, or a false advertising claim under the CPA, statutory damages under CEMA are available regardless of whether the plaintiff suffered any injury caused by the challenged representation. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154 (Wash. 2017) (holding that CEMA "does not condition the award of damages on proving either injury or causation"); *accord Brown v. Old Navy, LLC*, 567 P.3d 38, 42 (Wash. 2025) ("CEMA's $500 penalty does not require a showing of actual damages.").

D.E. 15 at 14. There is nothing in *Montes* about CEMA that would alter this position. There is nothing in *Montes* that overrules *Wright*. So this statement of the law—as Macy's articulated it mere months



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

ago—is still correct. Macy's offers a string of over-readings and inapposite hypotheticals here to argue to the contrary.[3]

The remainder of Macy's brief simply regurgitates its theory. Macy's references to Washington's Automatic Dialing Act are inapposite because there is no claim in this case under that law. Macy's cannot ignore *Wright* and point to a different statute to contend that the other statute is actually how damages under CEMA and the CPA should work.

**iii. Article II, Section 37 Does Not Apply.**

Macy's then gestures at constitutional problems with how damages works under CEMA and the CPA. D.E. 56 at 12. Macy's says that reading CEMA to satisfy the elements of a CPA claim would violate Article II, Section 37 of the Washington Constitution which prohibits amending existing statutes by implication. This argument fails at multiple levels and for independent reasons.

First, Macy's constitutional arguments are wholly premature. Courts have a duty to avoid constitutional questions where a case may be resolved on nonconstitutional grounds. *State v. Hall*, 95 Wn.2d 536, 539 (Wash. 1981) ("A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case."); *Turnstall v. Bergeson*, 141 Wn.2d 201, 210 (Wash. 2000) ("Where an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds."); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

---

[3] The hypothetical Macy's offers in its brief is not persuasive. D.E. 56 at 8. First, that is not the situation presented in this case, Second, it is not this Court's job to square every circle and right every wrong that may (or may not, as here) be present in state law. Federal courts do not make new state law, nor do they weave different state court decisions that clearly say one thing to fashion a new decision that says the opposite.

Because *Wright* remains binding authority governing the interaction between CEMA and the CPA while *Montes* neither addressed nor altered that framework, the Court should decline Macy's invitation to reach novel constitutional questions unnecessarily.

Second, Macy's argument overlooks that the Supreme Court of Washington thoroughly reviewed CEMA's statutory architecture and found it constitutionally sound. *Wright*, 189 WN.2d at 726-28. There, the court analyzed the relationship between CEMA and the CPA, interpreted those statutes as written, and gave effect to the Legislature's chosen enforcement mechanisms. Macy's ignores this analysis, and (again) asks the Court to adopt its own view on *Wright*. It provides no authority in support of that view, because there is none. *See, e.g.*, *Himes*, 336 F.3d at 852 (federal court "bound by a state's interpretation of its own laws").

Third, Macy's Article II, Section 37 argument misconstrues the nature of CEMA. Article II, Section 37 prohibits statutes from amending existing laws by implication without setting forth the amended provisions in full. Yet CEMA does not amend the CPA, expressly or by implication—it adopts the CPA's framework for private actions and establishes CEMA violations as unfair or deceptive acts. CEMA creates a separate enforcement mechanism that expressly incorporates CPA remedies and declares that practices prohibited by CEMA constitute unfair or deceptive acts for purposes of the CPA. R.C.W. 19.190.030(3). Macy's cites no authority holding that the Legislature violates Article II, Section 37 by creating a per se category of CPA liability—a technique the Legislature has employed in other statutes. As the Supreme Court of Washington describes, "The legislature understood that these two statutes work together: it made CEMA violations per se CPA violations," pointing to an amicus brief from the attorney generally for the proposition that "[p]er se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *See Brown*, 4 Wash. 3d 591–92 (citations and quotations omitted). Nor



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

has Macy's explained how the legislature's express integration with the CPA could constitute the type of implicit amendment that Article II, Section 37 prevents.

Fourth, Macy's argument proceeds from the premise that recognizing CPA injury in the CEMA context would eliminate the CPA's injury requirement altogether. This is ultimately an attack on *Wright* itself, not Plaintiffs' claims. Plaintiffs do not ask this Court to eliminate the CPA's injury requirement. Instead, Plaintiffs contend that *Wright* correctly recognized that CEMA's statutory framework satisfies the CPA's injury requirement "as a matter of law." 189 Wn.2d at 732. Between the state's high court determination regarding that state's law and Macy's unsupported assertions, *Wright* wins. In its recent amendment to CEMA, the Legislature left unchanged the statutory provisions that *Wright* construed and made no effort to alter the relationship between CEMA and the CPA. These targeted revisions confirm that the Legislature knew how to amend CEMA when it perceived a need for change or correction—and it did not disturb the framework (correctly) interpreted in *Wright*.

Macy's calls certain language in *Wright* "dicta." D.E. 56 at 12, n.3. *But compare Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986) ("A dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.") (Posner, J.), *with Wright*, 189 Wash. 2d at 731 ("Taken together, RCW 19.190.040's automatic damages language, the legislative intent to limit the practice of sending unsolicited commercial text messages, and the legislative intent to treat text messages in the same manner as spam *e-mail* weigh against requiring a CEMA plaintiff to independently prove injury and causation.") (emphasis added).

**II. Certification is Inappropriate.**



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Finally, Macy's asks the Court to certify two questions to the Supreme Court of Washington. This request is entirely inappropriate. If Macy's wanted to litigate what it now perceives as novel, complex questions of state law, there was a forum for doing that: in state court, where this case was filed. Instead, Macy's removed this case here and now complains how unclear state law is. Delaying this case further by certifying a question to the Supreme Court of Washington would entail needless delay—nothing more. Macy's simply lost a motion to dismiss here and wants a second bite at the apple based on a convoluted and wholly incorrect reading of state law. *See generally Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."); 17A Fed. Prac. & Proc. Juris. § 4248 (3d ed.) ("Questions ought not be certified if the answer is reasonably clear."). Macy's simply does not like what *Wright* says. That position is inappropriate. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 471 (1987) ("A federal court may not properly ask a state court if it would care in effect to rewrite a statute."); *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976) ("The purpose of certification is to ascertain what the state law is, not, when the state court has already said what it is, to afford a party an opportunity to persuade the court to say something else."). That is all Macy's is asking for here.

This request is particularly galling given the procedural history of this dispute. "[O]ne who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification." *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977); *see also Nat'l Bank of Wash. v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988) ("If Pearson had wanted the Maryland Court of Appeals to rule on the matter, he should not have removed the action to federal court."); *Oregon Aero Inc. v. Navigators Ins. Co.*, No. 3:21-CV-01178-AN, 2025 WL 3254653, at *4 (D. Or. Nov. 21, 2025) ("Removal already involves some amount of delay; defendant should not be permitted to delay



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

proceedings further by running back to the court it initially sought to avoid.”). Macy’s made this bed; now it must lie in it.

## CONCLUSION

The motion should be denied.

DATE: August 26, 2026

Respectfully submitted,

*/s/ Michael C. Tackeff*
Michael C. Tackeff, admitted *pro hac vice*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
mtackeff@stranchlaw.com

Lynn A. Toops, admitted *pro hac vice*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli, admitted *pro hac vice*
**STRAUSS BORRELLI, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiffs*

## WORD COUNT CERTIFICATE

I certify that this memorandum contains 5,859 words, in compliance with the Local Civil Rules.

*/s/ Michael C. Tackeff*
Michael C. Tackeff, admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I, Michael C. Tackeff, hereby certify that on August 26, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

*/s/ Michael C. Tackeff*
Michael C. Tackeff, admitted *pro hac vice*



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801